UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GARY BEDOR | : | CIVIL ACTION NO. |
| Plaintiff, | : | 301CV2146 (AWT) |
| | : | |
| v. | : | |
| | : | |
| FRIENDLY ICE CREAM CORPORATION, | : | |
| Defendant. | : | March 15, 2006 |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION FOR RECONSIDERATION**

**I.      Introduction**

The Complaint in this action was brought in five counts, all arising out of the termination of the Plaintiff's employment after more than 33 years' employment, shortly after the Plaintiff took extended leave under the Family Medical Leave Act ("the FMLA")for prostate cancer surgery.   The three federal counts of the complaint allege violations of the FMLA, the Age Discrimination in Employment Act, and the Americans with Disabilities Act ("the ADA").  The other two counts allege violations of the provisions of the Connecticut Fair Employment Practices Act ("CFEPA") which prohibit discrimination based upon age and physical disability, respectively.

On December 20, 2002, Defendant filed its Motion for Summary Judgment.  By Order dated September 29, 2005, the court denied the motion with respect to the counts alleging age discrimination and the count alleging a violation of the FMLA.  However, the court granted the motion with respect to the allegations of discrimination based upon disability.  The Plaintiff moved for reconsideration of the decision granting summary judgment with respect to those latter two counts, explaining  that the court

misapprehended the nature of the Plaintiff's argument with respect to the disability claims.[1]  On January 30, 2006, the Court granted reconsideration and reversed its decision as to the ADA and CFEPA claims, vacating judgement for the Defendant on these issues.  The Defendant now moves for reconsideration of this decision, claiming that no reasonable trier of fact could find the Plaintiff to have a disability within the meaning of the ADA or CFEPA.  Specifically, the Defendant claims that the Plaintiff's cancer could not be a disability because it was temporary, and that the Plaintiff's erectile dysfunction could not be a disability which "caused" his termination, because the Defendant was unaware of the erectile dysfunction.  In making these arguments, the Defendant ignores the facts, and the relevant law.

## II.    The Relevant Facts

The Plaintiff was diagnosed with prostate cancer in September 1999, after having been monitored for the suspected cancer diagnosis for approximately one year. (Bedor Depo at 67-69).  He underwent three sets of biopsies prior to the diagnosis being made. (Ex. 22, Treatment Notes of Dr. Laudone dated 12/1/99) He then met with several oncologists to discuss treatment options, eventually deciding to undergo radical prostatectomy, under which his prostate would be removed. (Bedor Depo at 67-69, Ex. 22, Notes dated 12/1/99-2/4/00)  He underwent this surgery in March 2000. (Id.) The Plaintiff's recovery from the surgery was somewhat slow (Ex. 22, Notes dated 4/12/00). He remained catheterized for several weeks.  (Ex. 22, Notes dated 3/17/00).  He was

---

[1]Specifically, the Plaintiff contends that at the time that he was terminated, he had cancer, and that this cancer limited a major life activity.  Specifically, the Plaintiff offered evidence that he suffered urinary incontinence and erectile dysfunction as a result of his cancer.

unable to work until mid-May, and at that time was returned with restrictions on his ability to travel. (Ex. 22 , Notes dated 4/28/00)

In mid April, when the Defendant decided to reassign him, the Plaintiff was suffering from urinary incontinence and a 50% loss of erectile function.  (Ex. 22, Notes dated 4/14/00).   At the time of his termination on August 8, 2000, the Plaintiff was still suffering from "persistent erectile dysfunction which, while helped by medication, was not normal compared to the average man his age".   (Laudone Depo 18, 22-23, 47-48;Ex. 9 p. 2).    He was unable to engage in intercourse. Id.

Two years post surgery, and more than 18 months after his termination, the Plaintiff testified that he did not have any current, active cancer, although he continued to need periodic checkups.  (Bedor Depo at 115-116) In September 2002, two and a half years post surgery, his physician believed that even with medication, "some degree of erectile dysfunction will be a permanent problem for Mr. Bedor.[2]  (Ex. 9)  The Plaintiff testimony confirmed this medical opinion.   He testified that even with the help of Viagra, his erectile function is "not nearly as strong ... as it was prior to the surgery, not even close."  (Bedor Depo at 78)

### III. The Plaintiff Has A Disability Under the ADA

The Defendant requests reconsideration, claiming that it is entitled to summary judgement because the Plaintiff did not have cancer at the time of the adverse

---

[2] According to his physician, during the summer of 2000, when the termination occurred, the Plaintiff was only able to achieve 65 % erectile function. (Laudone Depo at 22-23)   He identifies 70% as the level necessary to achieve penetration. (Id.)

3

employment actions.³  While it is true that the Plaintiff did not have active cancer at the time of the adverse employment actions, a reasonable trier of fact could find that his cancer, albeit no longer active, rendered him disabled within the meaning of the ADA because he was substantially limited with respect to the major life activity of sexual relations as a result of his cancer treatment.

Disability is a term of art under the ADA. The statute defines disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. §§ 12102(2). "[C]onsideration of subsection A of the definition proceeds in three steps." Bragdon v. Abbott, 524 U.S. 624, 118 S.Ct. 2196, 2202, (1998). First, the court must determine whether the plaintiff has an impairment. Id. Second, the court must identify the life activity upon which the plaintiff relies and determine whether it constitutes a major life activity under the ADA. Id. Third, the court asks whether the impairment substantially limited the major life activity. Id.

Moreover, the United State Supreme Court, in Sutton v. United Airlines, Inc., 527 U.S. 471, 483 (1999), explained that the determination of whether an individual is disabled under the ADA is made on an individualized, case-by-case basis.  A plaintiff who seeks to show that he is disabled within the meaning of the ADA must do more than submit evidence of a medical diagnosis of an impairment.   He must offer

---

³ It is undisputed that in determining whether or not the plaintiff is disabled within the meaning of the ADA, the alleged disability must be measured as of the time of the adverse actions.  See Heilweil v. Mount Sinai Hospital, 32 F.3d. 718 (2nd. Cir. 1999).

evidence that the extent of the limitations caused by his impairment in terms of his own experience is substantial.

In determining whether or not an individual is significantly restricted in any activity the Court must consider: "[t]he nature and severity of the impairment;" (2) "[t]he duration or expected duration of the impairment;" and (3) "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. §§ 1630.2(j)(2).   In doing so, the court must consider any negative side effects which that individual suffers from the use of corrective pr mitigating measures. See Sutton v. United Airlines, Inc., 527 U.S. 471, 484 (1999); EEOC v. J.B. Hunt Transportation, Inc. (N.D.N.Y.2001) 128 F.Supp.2d 117, 125 n. 12, *aff'd* (2d Cir.2003) 321 F.3d 69.   An individual will have a disability within the meaning of the Act, if the impairment itself, of the negative side effect of the treatment of an impairment, results in a substantially limitation on a major life activity". Sutton, 527 US. at   at 488.  See Also: Kammueller v. Loomis Fargo &Co., 383 F.3d. 779, (8th Cir 2004) ("[i]f a medical condition that is not itself disabling but requires, in the prudent judgement of the medical profession, treatment that is disabling, then the individual has a disability within the meaning of the Act").  As the Court explained,

> one has a disability under subsection (A) if, notwithstanding the use of a corrective device, that individual is substantially limited in a major life activity. For example, individuals who use prosthetic limbs or wheelchairs may be mobile and capable of functioning in society but still be disabled because of a substantial limitation on their ability to walk or run. The same may be true of individuals who take medicine to lessen the symptoms of an impairment so that they can function but nevertheless remain substantially limited.

Sutton, 527 US at 488.

In the present case, it is apparently undisputed that the Plaintiff had prostate cancer. This is clearly an impairment within the meaning of the ADA, since it is a physiological condition that affected one or more body systems, including the genito-urinary system.[4] In fact, cancer is one of the disorders that has been specifically identified as constituting a physical impairment.[5] It is also apparently undisputed that the ability to engage in sexual relations is a major life activity, and that a reasonable trier of fact could find that the Plaintiff, as a result of his cancer treatment, is substantially limited with respect to this major life activity.

The Defendant, however, argues that, since the Plaintiff did not have active cancer at the time of the adverse acts, his cancer could not be an impairment which resulted in a substantial limitation of a major life activity. This is simply incorrect. As was explained above, Sutton makes clear that the Plaintiff's cancer can be found to be a disability if the corrective treatment for this cancer substantially limited the Plaintiff with respect to the major life activity of sexual relations. Numerous cases, ignored by the Defendant in moving for consideration, have similarly confirmed that in determining whether or not cancer is a disability within the meaning of the ADA, it is necessary to

---

[4]An impairment is defined by the ADA as, " any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory,    including speech organs; cardiovascular; reproductive, digestive, **genito-urinary**; hemic and lymphatic; skin; and endocrine". 28 CFR § 41.31(a)(1),
(1997) (emphasis added).

[5]These include, "such diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, **cancer**, heart disease, diabetes, mental retardation,  emotional illness, and . . . drug addiction and alcoholism." 28 CFR § 41.31(a)(1) (1997) (emphasis added).

consider whether or not the side effects of any treatment have substantially limit the plaintiff with respect to any major life activity.

In <u>Keller v. Board of Education</u>, 182 F. Supp. 2d. 1148, 1155-1156, (D. New Mexico 2001), the court denied defendants motion for summary judgement, finding that the plaintiff's evidence of atrophic vaginitis and loss of libido resulting from her breast cancer treatment raised a genuine issue of material fact as to whether or not she was substantially limited in the major life activity of sexual intercourse. In <u>EEOC v. Gallagher</u>, 181 F.3d. 645, 654 (5th Cir. 1999), the court explained that in determining whether or not cancer was a disability within the meaning of the ADA, it was necessary to, "consider the actual effects of [plaintiff's] impairment and the side effects of his treatment". See Also: <u>Gordon v. E.L. Hamm & Assoc. Inc.</u>, 100 F.3d. 907, 912 (1996)(finding chemotherapy treatment to be disabling);<u>Treiber v. Lindbergh School District</u>,199 F. Supp. 2d. 949, 960 (Ed. Mo. 2002) (granting summary judgement where plaintiff, "has not introduced any medical evidence that her cancer or treatment thereof has affected her ability to have sexual relations...[and has introduced no evidence that] side effects were other than temporary other than a limited range of motion in her left arm and a slight swelling in that arm").

Moreover, several cases have explicitly found that cancer can be a disability within the meaning of the ADA even if it is not active at the time of the adverse acts, if the results of the cancer substantially limit a major life activity at the time of the adverse acts. In <u>Leicht v. Hawaiian Airlines Inc.</u>, 77 F. Supp. 2d. 1134, 1147-1148, (D. Hawaii 1999), the court found that plaintiff's cancer, even in remission, could be a disability within the meaning of the ADA, because it limited the plaintiff's ability to walk and

stand at the time of the adverse actions.  <u>Id.</u>   The court explained,

> temporary impairments often do not qualify as disabilities... However, the court cannot conclude that, as a matter of law, cancer that is life threatening is not a disability if it is life threatening for what Hawaii characterizes as "only four months".  In determining whether an impairment substantially limits a major life activity, courts are to consider not only the duration of the impairment but the nature and severity... [g]iven the severity of the cancer's impact on [plaintiff], the duration does not justify summary judgement".

<u>Id.</u>   See Also: <u>Vendetta v. Bell Atlantic Corp.</u>, 1998 WL 575111 at *7(D. Pa. 1998) (denying summary judgement where plaintiff alleged that she continued to suffer from the effects of her cancer treatment, even though her cancer was in remission); <u>Demarah v. Texaco Group, Inc.</u>, 88 F. Supp.2d. 1150, 1155 (D. Col. 2000) (genuine issue of material fact as to whether plaintiff, whose cancer was in remission at the time of the litigation, "was substantially limited in the major life activities of working, walking, and caring for herself at the time of the alleged discriminatory conduct for a period of sufficient duration sp as to be considered `disabled'").;

In the present case, the Plaintiff was diagnosed with cancer, and following the advice of his oncologists, underwent a radical prostatectomy.  As a result of this corrective measure, the Plaintiff no longer had active cancer at the time that the Defendants reassigned and then terminated him.  However, while the duration of the Plaintiff's active cancer was approximately eight months after diagnosis, the impact resulting from this impairment was **not** resolved after eight months.  Instead, the corrective or mitigating measure that removed the active cancer cells and arguably saved the Plaintiff's life, resulted in urinary incontinence and erectile dysfunction.  At the time of the adverse acts, the Plaintiff was unable to engage in sexual intercourse.  The Plaintiff's physician has also indicated that the erectile dysfunction resulting from

this cancer treatment is permanent.    Consequently, a reasonable trier of fact could find that even with mitigating or corrective measures, the Plaintiff's cancer resulted in a substantial limitation with respect to the major life activity of sexual relations.  This is sufficient to create a genuine issue of material fact as whether the Plaintiff is disabled within the meaning of the ADA as a result of his prostate cancer.[6]  The Defendant's Motion for Reconsideration must, therefore, be denied.

## IV.    The Plaintiff Has A Disability Under the CFEPA

In Count Four of the Complaint, the Plaintiff alleges that he was discharged and otherwise discriminated against because of his disability in violation of the Connecticut Fair Employment Practices Act (CFEPA).   The statutory definition of a physically disabled person, for purposes of the CFEPA, is

> any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device.

Conn. Gen. Stat.  §46a-51(15)(emphasis added).

Again, the Plaintiff's physical disability in this case is cancer.  It is undisputed that this is an illness, and that the treatment of this illness resulted in chronic erectile dysfunction.   Thus, the Plaintiff has a chronic infirmity or impairment resulting from

---

[6] The Defendant has explained that it was unaware of the specific limitation caused by the cancer which rendered the Plaintiff disabled.    However, it is  not necessary that the Plaintiff prove that the Defendant was aware of the specific limitations caused by his disability, so long as the defendant is aware of the disabling condition.    See:  Colwell, 158 F.3d 635 at n.1.; Monroe v. Cortland County, N.Y., 37 F.Sup.2d 546, 552  (NDNY 1999); Saunders, 2000 U.S. Dist. LEXIS 21237, *18.

illness which a reasonable trier of fact could find constitutes a physical disability.[7]   The fact that the Defendant was aware of the cancer that rendered the Plaintiff physically disabled, but not the resulting chronic erectile dysfunction is not determinative.

The Plaintiff clearly must show: (1) that he is disabled within; and (2) that the adverse actions were taken, in motivating part, because of his disability.   However, it is simply not necessary that the Plaintiff prove that the Defendant was aware of the specific limitations or infirmities caused by his disability or that the defendant was motivated by the limitation.   Indeed, in Monroe v. Cortland County NY, 37 F. Supp. 2d. 546, 552 (NDNY), "a "disability" and a "limitation" involve distinct concepts..... no causal connection is required to be shown between a particular limitation and an employer's discriminatory response."   See Also:  Colwell, 158 F.3d at 644 n. 1 ("We need not consider whether a plaintiff must show that the discrimination he suffered is motivated in any way by the limitation of the particular life activity."); Saunders v. Webber Oil Co., 2000 US D. Lexis 21237, at *18 (D. Me. 2000).[8]

Thus, the Plaintiff is physically disabled under CFEPA, was qualified for his position and was transferred and terminated under circumstances giving rise to an inference of discrimination.   After his termination, his duties were re-assigned to non-disabled employees, and the Defendant asserted numerous and varied pretextual

---

[7]In its motion for reconsideration, the Defendant points out that chronic means "of long duration".  (See Def's Memo at 4)   This is correct.   However, in this case the cancer resulted in an infirmity or limitation that is of long duration.   Thus, he meets the definition of a physically disabled person within the meaning of CFEPA.

[8] These cases, cited by the Plaintiff in his Memorandum in Opposition to Defendants' Motion for Summary Judgement, have been completely ignored by the Defendant in its Motion for Reconsideration.

explanations for the termination.   Consequently it is apparent that the Defendant's motion for reconsideration must be denied.

**V.     CONCLUSION**

For all of the foregoing reasons, and those set out in the Plaintiff's Motion for Reconsideration, and the Plaintiff's Memorandum in Opposition to Defendant's motion for Summary Judgement, Gary Bedor  respectfully requests that the Court deny the Defendant's  Motion for Reconsideration.

                    RESPECTFULLY SUBMITTED,
                    THE PLAINTIFF


By: _____
     Mary E. Kelly ct# 07419
     Thomas W. Meiklejohn ct08755
     Livingston, Adler, Pulda,
     Meiklejohn & Kelly, P.C.
     557 Prospect Avenue
     Hartford, CT 06105-2922
     (860) 233-9821

## CERTIFICATE OF SERVICE

      This hereby certifies that the foregoing Plaintiff's Memorandum in Opposition to Defendant's Motion for Reconsideration was mailed, first-class mail, postage pre-paid on this 15th day of March 2006 all counsel of record as follows:

Floyd J. Dugas
Warren L. Holcomb
Berchem, Moses & Devlin, P.C.
75 Broad Street
Milford, CT 06460

_____
Mary E. Kelly