**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____

| | | |
|---|---|---|
| GARY BEDOR | : | CIVIL ACTION NO. |
| Plaintiff, | : | 301CV2146 (AWT) |
| | : | |
| v. | : | |
| | : | |
| FRIENDLY ICE CREAM | : | |
| CORPORATION, | : | |
| Defendant. | : | March 24, 2006 |

_____:

## PLAINTIFF'S PROPOSED CHARGE TO THE JURY

Pursuant to Rule 51 of the Federal Rules of Civil Procedure and this Court's Pre-trial Order, the Plaintiff, Gary Bedor, submits the following proposed jury instructions. The Plaintiff reserves his right to amend these proposed instructions in response to events which occur during the course of the trial.

1.    **BASIS OF SUIT**

The Plaintiff, Gary Bedor, claims that the Defendant, Friendly Ice Cream Corporation violated a federal statute known as the Family and Medical Leave Act, by retaliating against him for having taken a medical leave of absence.   The Plaintiff also claims that the Defendant discriminated against him because of his age and his disability in violation of federal statutes known as the Age Discrimination in Employment Act (ADEA), and the Americans with Disabilities Act ( ADA) and a  Connecticut statute known as the Connecticut Fair Employment Practices Act.

Specifically, he asserts that the Defendant terminated him because of his age, his prostate cancer  and/or because he had taken a medical leave to be treated for prostate cancer.   Each of these claims is separate and distinct.  That is, you may find a violation with respect to one or more of these claims without finding a violation with respect to another claim.  For example, you may find that the Plaintiff was retaliated against for taking a medical leave but not discriminated against because of his age or disability, or you may find that he was both retaliated against and discriminated against or you may find that he was neither retaliated against or discriminated against.  You should consider each of these claims separately.  I will separately explain the law with respect to each claim.

2.    __GENERAL PRINCIPLES OF AGENCY__ (Supplement to Court's Standard Instructions)

The Defendant in this action is a corporation, and acts through its employees.  It is established law that under certain circumstances an employer may be liable for the wrongs, even wilful wrongs, done by its representatives if the wrongs are committed during the scope of the employees' employment duties and in furtherance of the employer's business.  The employer's liability rests upon a broad principle of public policy, that if a corporation prefers to manage its affairs through others, the corporation is bound to manage them in such a way that no person shall suffer injury from a wrong done by that other, while engaged upon the employer's business and acting within the scope of his employment.

The fact that the employee was not specifically authorized to commit the act, or was even  violating instructions which had been given to him does not relieve the corporation from liability.   A corporation is liable even if the employee was acting out of personal animosity, if the acts were committed within the scope of his employment.

In this case, it is not disputed that Mr. Maglioli was engaged upon Friendly Ice Cream Corporation's  business and was acting within the scope of his employment when he made the decisions to transfer Mr. Bedor and when he made the decision to terminate Mr. Bedor.   It is undisputed that any wrongs that you might find he committed were the result of his attempts to carry out the work entrusted to him by the corporation. Therefore, I instruct you that the Defendant, Friendly's Ice Cream Corporation is liable for his conduct.[1]

---

[1]    See Devitt & Blackmar, 3 Federal Jury Practice & Instructions, § 71.09 at 26 (4th ed. 1987); Wright, FitzGerald, and Ankerman, Conn. Law of Torts § 63, n. 8 at 161-64 (3rd ed. 1991); Rich-Taubman Assoc. v. Comm'r of Revenue Services, 236 Conn 613, 619,

Now I am not suggesting that Friendly's Ice Cream Corporation is liable. Whether or not Mr. Bedor was discriminated against or retaliated against as he claims is a matter for you to decide in accordance with these instructions.   I am only instructing you that you must find that Friendlys Ice Cream Corporation is legally responsible if you find that Mr. Maglioi discriminated against or retaliated against Mr. Bedor.

---

624, 674 A.2d 805 (1996); Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 500-501, 656 A.2d 1009 (1995); A-G Foods Inc. v. Pepperidge Farm Inc., 216 Conn. 200, 208, 209-10, 529 A.2d 69 (1990); Cardona v. Valentin, 160 Conn. 18, 22, 273 A.3d 697 (1970); Pelletier v. Bilbiles, 154 Conn. 544, 548 (1967); Son v. Hartford Ice Cream Co., 102 Conn. 696, 699, 129 A. 778 (1925); Stickney v. Epstein, 100 Conn. 170, 178-79, 123 A.I (1923); Bank of Montreal v. Gallo, 3 Conn. App. 268, 273, 487 A.2d 1401 (1985), *appeal denied*, 195 Conn. 803, 491 A.2d 1103 (1985).

### 3.    RETALIATION FOR EXERCISING RIGHTS UNDER THE FAMILY MEDICAL LEAVE ACT (FMLA)

The Plaintiff's first claim against Defendant Friendly Ice Cream Corporation is for a violation of the Family and Medical Leave Act, called the FMLA.   The Family and Medical Leave Act of 1993 is a federal statute that seeks to balance the demands of the workplace with the needs of families.    It permits certain employees to take unpaid leave for medical reasons, or for the birth or adoption of a child, or to care for a child, spouse or parent who has a serious health condition.[2]  Under the FMLA, an eligible employee is entitled to take up to 12 workweeks of unpaid leave during any year to be treated or recover from any serious health condition that makes the employee unable to perform the functions of his or her position. [3]

The FMLA creates two interrelated rights for employees.   First, the employee has the right to take up to twelve weeks of unpaid leave for treatment of a serious health condition, to care for an ill spouse, child or parent, or for the birth  or adoption of a child. Second, an employee who takes FMLA leave has the right to be restored to his or her original position or to a position equivalent in benefits, pay, and conditions of employment upon return from leave, and to be free from discrimination or retaliation for having taken such a leave.[4]

---

[2]  See: 29 U.S.C. §2601.

[3] See:  29 U.S.C. §2612.

[4]  Cendant Corp. v. Connecticut Department of Labor, 276 Conn. 16 (2005), quoting Nevada Dept. of Human Resources v. Hibbs, 538 U.S. 721, 732, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003); 29 U.S.C.§§2612(a)(1)(D), 2615(a)(1)and(2)

In the present case, Mr. Bedor claims that Friendly Ice Cream Corporation both transferred him to a worse position in retaliation for his having taken a medical leave, and that Friendly Ice Cream Corporation terminated him in retaliation for his having taken a medical leave which he was entitled to take under the FMLA.   These are two separate claims for violations of the FMLA.

With respect to the first, Mr. Bedor claims that Friendly Ice Cream Corporation refused to return him to his original position after his medical leave, and instead first assigned him to a district much further from his home, which contained restaurants that were performing poorly,  and when he refused that reassignment for medical reasons, then assigned him to a temporary district.    Mr. Bedor claims that Mr. Maglioli, on behalf of Friendly Ice Cream Corporation, assigned him to this less desirable position in retaliation for his having taken a medical leave.

With respect to the second claim, Mr. Bedor claims that he was terminated on August 8, 2000 in retaliation for having taken a medical leave protected under the FMLA.

To prevail on his  claims of retaliation, Mr. Bedor must prove, by a preponderance of the evidence, first that he was in the protected group - that is that he exercised his right to take a medical leave under the FMLA;  second that the employer was aware of that activity; third, that he suffered an adverse employment action, and finally that there was a causal connection between the adverse action and his having taken a medical leave protected under the FMLA.[5]

---

[5]Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1176-1177 (2nd Cir. 1996); Cosgrove v. Sears, Roebuck & Co., 9. F.3d 1933, 1039 (2nd Cir. 1993); Bedor v. Friendly's Ice Cream Corp., 2005 WL 2406012 (D. Conn. 2005); Palma v. Pharmedica Communications, Inc., 2003 WL 22750547 (D. Conn. 2003); Brenlla v. LaSorsa Buick Pontiac Chevrolet Inc., 2002 WL 1059117 (SDNY 2002);Cendant Corp. v. Connecticut Department of Labor, 276 Conn. 16 (2005).

**4A.    THE FIRST FACTOR**

In the present case, Friendly Ice Cream Corporation admits that it is an employer within the meaning of the FMLA, that Mr. Bedor is an eligible employee within the meaning of the FMLA,  and that Mr. Bedor took a medical leave for treatment of a serious health condition that made him unable to perform the functions of his position. Therefore, you must find that the Plaintiff has proven the first element- that he is a person protected under the FMLA.

**4B.  THE SECOND FACTOR**

In the present case, Friendly Ice Cream Corporation admits that it was aware that Mr. Bedor had taken a medical leave.  Therefore, you must find that the Plaintiff has proven this second factor.[6]

---

[6]  Woodman v. WWOR-TV, Inc., 411 F.3d. 69 (2nd. Cir. 2005); Gordon v.New York Ciry Board of Education, 232 F.3d. 111, 113 (2nd. Cir. 2000).

### 4C.    THE THIRD FACTOR: AN ADVERSE EMPLOYMENT ACTION

An adverse employment action is any that constitutes a materially adverse change in the terms and conditions of the Plaintiff's employment.    A change in work responsibilities or duties may  be an adverse employment action under certain circumstances.  However, it is not enough for the employee to show that his responsibilities are merely different, or that he has suffered a personal inconvenience because of a change in the conditions of his employment.   Instead, the employee must show that  the alteration in job responsibilities made the position less valuable.   It is sufficient if the employee can show that the change involves significantly diminished material responsibilities, or involves more menial tasks or has fewer opportunities for advancement.

A termination is an adverse employment action.   A transfer from a permanent position to a temporary job is also an adverse employment action.    Therefore, I instruct you that you are to find that the Plaintiff was subjected to adverse employment actions. [7]

---

[7] Bedor v. Friendly's Ice Cream Corp., 2005 WL 2406012 (D. Conn. 2005); Burlington Industries Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 2268-2269 (1998); Richardson v. New York State Correctional Services, 180 f.3d. 426, 446, (2nd. Cir. 1999); Brown v. Cox, 286 F.3d. 1040, 145-1046 (8th Cir. 2002); Crady v. Liberty National Bank & Trust Co., 993 F.2d. 132, 136 (7th Cir. 1993); Flaherty v. Gas Research Institute, 31 F.3d. 451, 456 (7th Cir. 1994); Kocsis v. Multi-Care Management Inc., 97 F.3d. 876, 887 (6th Cir. 1996); Harlston v. McDonnell Douglas Corp., 37 F.3d. 379, 382 (8th Cir. 1994); Raffaele v. City of New York, 2004 WL 1969869 at *19 (EDNY 2004).

**4D.  THE FOURTH FACTOR:  AN INFERENCE OF RETALIATION**

However, the fact that Mr. Bedor was subjected to adverse employment actions is not sufficient to establish that Friendly's Ice Cream Corporation is liable for retaliation. As I explained before, Mr. Bedor must also prove to you by a preponderance of the evidence  that there is a causal connection between the adverse employment actions and his having taken a medical leave protected by the FMLA.    He must show that his having taken a medical leave was a motivating factor  in Friendly Ice Cream Corporation's decision to discharge him, or the decision  to transfer him to a temporary position.

Now, Mr. Bedor does <u>not</u> need to prove that his having taken a medical leave was the only factor in the Defendant's decision, as long as it was a factor that motivated the Defendant, or contributed to the Defendant's decision.   Mr. Bedor does not even have to prove that the fact that he took a medical leave  was the principal factor in the decision.  A motivating factor is a factor that makes a difference in the Defendant's decision, played a part in the Defendant's decision, or was a consideration that moved the Defendant toward its decision.  In other words, you should find for the Plaintiff if you conclude that the Plaintiff's exercise of rights under the FMLA  made a difference in the Defendant's decision.

In determining motivation, you should consider that an intent or motive to violate the law is seldom admitted and can rarely be established by direct evidence.  An intent to retaliate must often be proved circumstantially and may be inferred by the existence of other facts.   In order to determine whether retaliation was a motivating factor, you should consider all of the evidence that may be available.  Your job as jurors will be to analyze all of the facts and circumstances and to determine whether the Plaintiff has

proven that it is more likely than not that his having taken a medical leave was a motivating factor in the Defendant's decision or decisions.

Among the circumstantial evidence that you may consider in order to determine whether the Defendant's intent or motive was retaliatory are the following:  First, the timing of events.   The fact that the protected activity was closely followed in time by an adverse action, may be considered in determining the Defendant's motives. Second, departures from normal procedures might be evidence that improper purposes are playing a role.

Third, if you conclude that the Plaintiff's evidence shows that having taken a medical leave  was a motivating factor in the Defendant's adverse treatment of other similar  employees, you may consider that evidence in drawing an inference that his having take a medical leave was a motivating factor in the Defendant's treatment of the Plaintiff.  A conclusion on your part that the Defendant treated another employee adversely because of his FMLA leave  does not, by itself, prove that the Defendant retaliated or discriminated against the Plaintiff.  However, an employer's practice with respect to another employee who had taken a leave under the FMLA  may assist you in drawing an inference that the Plaintiff's protected activity was a factor that made a difference in the employer's treatment of him.

Fourth,  you may consider whether the reasons offered by the Defendant for its actions are believable or whether they are a pretext for discrimination.  A pretext is simply another word for cover-up.  If you find that the Defendant's reasons are not worthy of belief, this alone may be sufficient to establish that the Defendant's actions were taken with a retaliatory motive.  Resort to a pretextual explanation may itself be viewed as evidence that the Plaintiff has proven his case.    In evaluating the evidence

you will be attempting to infer the Defendant's motivation, and resort to a pretextual

explanation may itself be viewed as evidence indicating consciousness of guilt.  If you

find that the Defendant has provided a false explanation for the Plaintiff's dismissal, the

law allows but does not require you to conclude based on that fact alone that retaliation

was a motivating factor in the Defendant's decision to terminate the Plaintiff.   This is not

to suggest that you should consider only this evidence, but that this evidence alone

would be sufficient to allow you to conclude that the Plaintiff has proven his case.

However, it is up to you to decide, based on all of the evidence presented,

whether or not Mr. Bedor has proven that it is more likely than not that the Defendant

acted with a retaliatory motive.   In reaching your conclusion, you must remember that  it

is not your role to decide whether the Defendant treated the Plaintiff fairly or unfairly.

You cannot find for the Plaintiff simply because you feel sorry for him or to reward him

for past services to the Defendant or because of some general feeling that he deserved

better from his employer.   Under the FMLA, an employer has a right to terminate an

employee or change an employee's area and duties  for good reasons, bad reasons, or

even for no reason at all, as long as its decision is not based on the employee's having

taken a medical leave.   Your sole responsibility is to decide whether the Plaintiff was

subjected to retaliation because of his having taken a medical leave for treatment of his

prostate cancer.

If you find that the Plaintiff has proven that it is more likely than not that

Defendant Friendly's Ice Cream Corporation discharged him or transferred him to a

temporary position because of his having taken a medical leave  under the FMLA then

your verdict should be for Mr. Bedor on this claim.   If  you find that the Plaintiff has not

proven by the preponderance of the evidence that Defendant Friendly's Ice Cream

Corporation acted with a retaliatory motive, then you must find for the Defendant as to this claim.[8]

---

[8]Reeves v. Sanderson Plumbing Products Inc., 530 US 133, 143 (2000); Price Waterhouse v. Hopkins, 490 U.S. 228, 250-2, 109 S.Ct. 1775, 1791 (1989) (plurality opinion); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); O'Connor v. Consolidated Coin Caterers Corporation, 517 U.S. 308, 116 S.Ct. 1307 (1996); Potenza v. City of New York, 365 F. 3d 165167-168 (2nd. Cir.2004);  Gordon v. New York City Board of Education, 232 F.3d. 111 (2nd. Cir. 2000);  Danzer v. Norden Systems Inc., 151 F.3d 50, 54 (2nd Cir. 1998); Kirsch v. Fleet Street, LTD., 148 F.3d. 149, (2nd Cir. 1998); Norton v. Sam's Club, 145 F.3d 114, 118 (2nd Cir. 1998); Stern v. Trustees of Columbia University, 131 F.3d 305, 312 (2nd Cir. 1998); Stratton v. Department for the Aging for the City of New York, 132 F.3d 869 (2nd Cir. 1997); Renz v. Grey Advertising, 135 F.3d 217, 222 (2nd Cir. 1997); Luciano v. The Olsted Corporation, 110 F.3d 210, 215 (2nd Cir. 1997). Reed v. A.W. Lawrence & Co. Inc., 95 F.3d 1170, 1177 (2nd Cir. 1996);  Cronin v. AetnaLife Insurance Co., 46 F.3d 196, 203 (2nd Cir. 1995); Cabrera v. Jakabovitz, 24 F.3d 372, 380-83 (2d Cir. 1994) cert. denied 115 S. Ct. 205 (1994); Cosgrove v. Sears Robuck & Co., 9 F.3d. 1033 (2nd. Cir. 1993);  Ostroski v. Atlantic Mut. Ins. Companies, 968 F.2d 171, 180-1 (2d Cir. 1992); Owens v. New York Housing Authority, 934 F.2d 405, 409 (2d Cir.) cert denied, 112 S. Ct. 431 (1991);  Sumner v. US Postal Service, 899 F.2d. 203, 209 (2nd. Cir. 1990); Bedor v. Friendly's Ice Cream Corp.2005 WL 2406012 (D. Conn. 2005); Palma v. Pharmedica Communications Inc., 2003 WL 22750547 (D. Conn. 2003);  Rose v. James River Paper Company, 2 F. Supp. 2nd 245, 250 (D. Conn. 1998);Shkolnick v.  Combustion Engineering, Inc., 856 F.Supp. 82, 87 (D.Conn. 1994); Mann. v. Mass. Correa Elec. J.V., 2002 WL 88915 (S.D.N.Y. 2002);Sorrentino v. All Seasons Services, Inc., 246 Conn. 756 (1998); Ford v. Blue Cross and Blue Shield of Connecticut, Inc., 216 Conn. 40 (1990); Oakes v. New England Dairies, Inc., 219 Conn. 1 (1991).

**5. <u>REDUCTION IN FORCE</u>**

As you know, the Defendant contends that the Plaintiff's transfer to a new area was the result of a reorganization. Employers are entitled to conduct such reorganizations and reductions in force and it is not for you or I to question the wisdom of that decision. If you conclude, based upon the evidence, that the Defendant conducted a legitimate reorganization or reduction in force, you may still find for the Plaintiff if he has proven by a preponderance of the evidence that he suffered an adverse employment action for unlawful, retaliatory reasons. The Plaintiff does not have to prove that the reorganization as a whole was a pretext for retaliation in order to prevail. In a reduction in force/reorganization case, the Plaintiff need not even show that he was replaced by a newly hired employee, but only that his transfer occurred under circumstances giving rise to an inference of retaliation for having taken a medical leave.

If you find that, in the reorganization, the Defendant found more favorable positions for employees who had not taken medical leaves under the FMLA, but not for those employees who had exercised their right to take a leave under the FMLA, you are permitted, but not required, to draw from that fact an inference of retaliation. Again, the issue for you to decide is whether or not Mr. Bedor's having taken a medical leave was a factor that made a difference.[9]

---

[9] <u>Cronin v. Aetna Life Insurance Co.</u>, 46 F.3d 196 (2d Cir. 1994); <u>Maresco v. Evans Chemetics Division</u>, 964 F.2d 106, 111 (2d Cir. 1992); <u>Shkolnick v. Combustion Engineering</u>, 65 FEP 1493, 1495 (D.C. Conn. 1994); and <u>Thornley v. Penton Publishing, Inc.</u>, No. 2:92-CV-51 (RNC), *Charge of the Jury*, 4/28/95, pp. 13-14.

### 6. **ADEA- AGE DISCRIMINATION**

The Plaintiff has also brought a claim under the a federal law which is entitled the Age Discrimination in Employment Act, and referred to as the "ADEA."   The ADEA provides that it is unlawful for an employer to discriminate against or to terminate any individual because of his age, provided that the individual is 40 or older.   The purpose of the ADEA is to prevent employment discrimination based on age.

Simply because an employer terminates  an employee who is 40 years of age or older does not mean that an act of age discrimination has taken place.   These statutes do not require an employer to give special, favorable treatment to employees  who are 40 years of age or older.  Instead, employers are to evaluate  employees on their merits and not their age.

The Plaintiff claims that the Defendant discriminated against him because of his age  by transferring him- first to  a district much further from his home, which contained restaurants that were performing poorly, and then when he was unable to accept that position because he was recovering from treatment for cancer surgery- to a temporary district.   Mr. Bedor also claims that Mr. Maglioli, on behalf of Friendly's Ice Cream Corporation, discriminated against him because of his age by terminating him.  The Defendant denies that age was a factor in its decisions to reassign and to terminate Mr. Bedor.

You are to analyze the claim of age discrimination in a similar way as the claim for retaliation under the FMLA.   Mr. Bedor must prove, by a preponderance of the evidence, that  he is in the protected group- that is, that he is over 40 years of age; that he had the qualifications for the position he held; that he suffered an adverse

employment action or actions, and finally that there is a causal connection between his age and the adverse employment actions.[10]

In the present case, it is undisputed that Mr. Bedor was 51 years of age at the time of the termination, and that he had the qualifications for the position.   As I have previously instructed you, both  termination and reassignment to a temporary position are adverse employment actions.  Therefore, the only element that you must decide is whether the Plaintiff has shown that his age was a motivating factor in the Defendant's decisions.

In these instructions, I have used the age 40 because the ADEA prohibits discrimination against employees age 40 or over.  That does not mean, however, that the ADEA only prohibits the employer from favoring employees who are younger than 40.  The ADEA also prohibits employers from discriminating against employees over 40 in favor of substantially younger employees.  For example, the ADEA prohibits an employer from discriminating against a 55 year old in favor of a 45 year old employee, because of those employees' ages.  The question  is whether the Plaintiff's age was a factor in the Defendant's employment decision.

Your role as a jury will be to analyze all the facts and circumstances and to determine, based on a preponderance of the evidence, whether Mr. Bedor's age was a factor that made a difference with respect to the Defendant's decision to reassign him to the temporary position or to terminate him.  In order to determine whether discrimination was a motivating factor in the Defendant's treatment of the Plaintiff, you should consider

---

[10]Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1176-1177 (2nd Cir. 1996); Cosgrove v. Sears, Roebuck & Co., 9. F.3d 1933, 1039 (2nd Cir. 1993); Bedor v. Friendly's Ice Cream Corp., 2005 WL 2406012 (D. Conn. 2005).

all of the evidence of intent or motive that may be available.  As I have already told you, in determining the Defendant's motivation, you should consider that intent or motive can rarely be established by direct evidence and must often be proved circumstantially and by inference.

Among the circumstantial evidence that you may consider in order to determine whether the Defendant's intent or motive was discriminatory are the following:

First, the employer's practice with respect to other employees may assist you in drawing an inference that the Plaintiff's age was a factor that made a difference.  A conclusion on your part that the Defendant discriminated against another employee does not, by itself, prove that the Defendant discriminated or retaliated against the Plaintiff but if you conclude that the Plaintiff's evidence shows that age was a motivating factor in the Defendant's treatment of another employee, you may consider that evidence in drawing an inference that it was a motivating factor in the Defendant's treatment of him.

Second, a failure to follow the Defendant's normal policies or procedures might be evidence that improper purposes are playing a role.

Third, you may again consider whether the reasons offered by the Defendant for its actions are believable or whether they are a pretext for discrimination.  If you find that the Defendant's reasons are not worthy of belief, this alone may be sufficient to establish that Defendant's actions were taken with a discriminatory motive.  Resort to a pretextual explanation may itself be viewed as evidence of discrimination.

However, it is up to you to decide, based on all of the evidence presented, whether or not Mr. Bedor has proven that it is more likely than not that the Defendant acted with a discriminatory  motive.  You should consider all the evidence to determine

17

whether he has proven by a preponderance of the evidence that his age, or the

Defendant's stereotypical beliefs about his age, or any age-related stereotype or

discriminatory impulse, more than likely motivated the Defendant.  That is the ultimate

determination you must reach on this count.

In reaching your conclusion, you must again remember that you cannot find for

the Plaintiff simply because you feel sorry for him or to reward him for past services to

the Defendant or because of some general feeling that he deserved better from his

employer.   Under the ADEA, like the FMLA, an employer has a right to terminate an

employee or change an employee's area and duties  for good reasons, bad reasons, or

even for no reason at all, as long as its decision is not based on the employee's age.[11]

---

[11]Reeves v. Sanderson Plumbing Products Inc., 530 US 133, 143 (2000); Price Waterhouse v. Hopkins, 490 U.S. 228, 250-2, 109 S.Ct. 1775, 1791 (1989) (plurality opinion); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); O'Connor v. Consolidated Coin Caterers Corporation, 517 U.S. 308, 116 S.Ct. 1307 (1996); Potenza v. City of New York, 365 F. 3d 165167-168 (2nd. Cir.2004);  Gordon v. New York City Board of Education, 232 F.3d. 111 (2nd. Cir. 2000);  Danzer v. Norden Systems Inc., 151 F.3d 50, 54 (2nd Cir. 1998); Kirsch v. Fleet Street, LTD., 148 F.3d. 149, (2nd Cir. 1998); Norton v. Sam's Club, 145 F.3d 114, 118 (2nd Cir. 1998); Stern v. Trustees of Columbia University, 131 F.3d 305, 312 (2nd Cir. 1998); Stratton v. Department for the Aging for the City of New York, 132 F.3d 869 (2nd Cir. 1997); Renz v. Grey Advertising, 135 F.3d 217, 222 (2nd Cir. 1997); Luciano v. The Olsted Corporation, 110 F.3d 210, 215 (2nd Cir. 1997). Reed v. A.W. Lawrence & Co. Inc., 95 F.3d 1170, 1177 (2nd Cir. 1996);  Cronin v. AetnaLife Insurance Co., 46 F.3d 196, 203 (2nd Cir. 1995); Cabrera v. Jakabovitz, 24 F.3d 372, 380-83 (2d Cir. 1994) cert. denied 115 S. Ct. 205 (1994); Cosgrove v. SearsRobuck & Co., 9 F.3d. 1033 (2nd. Cir. 1993);  Ostroski v. Atlantic Mut. Ins. Companies, 968 F.2d 171, 180-1 (2d Cir. 1992); Owens v. New York Housing Authority, 934 F.2d 405, 409 (2d Cir.) cert denied, 112 S. Ct. 431 (1991);  Sumner v. US Postal Service, 899 F.2d. 203, 209 (2nd. Cir. 1990); Bedor v. Friendly's Ice Cream Corp.2005 WL 2406012 (D. Conn. 2005); Palma v. Pharmedica Communications Inc., 2003 WL 22750547 (D. Conn. 2003);  Rose v. James River Paper Company, 2 F. Supp. 2nd 245, 250 (D. Conn. 1998);Shkolnick v.  Combustion Engineering, Inc., 856 F.Supp. 82, 87 (D.Conn. 1994); Mann. v. Mass. Correa Elec. J.V., 2002 WL 88915 (S.D.N.Y. 2002);Sorrentino v. All Seasons Services, Inc., 246 Conn. 756 (1998); Ford v. Blue Cross and Blue Shield of Connecticut, Inc., 216 Conn. 40 (1990); Oakes v. New England Dairies, Inc., 219 Conn. 1 (1991).

### 7.  AGE DISCRIMINATION IN VIOLATION OF CFEPA

The Plaintiff also claim is that the Defendant's conduct violated the Connecticut law forbidding discrimination on the basis of age.  The analysis of whether the Plaintiff has proven discrimination by a preponderance of the evidence is the same under state or federal law.  Therefore I instruct you that if you find for the Plaintiff as to the claim  of discrimination in violation of ADEA, you must also enter a verdict for the Plaintiff on his claim under the Connecticut Fair Employment Practices Act.   Similarly, if you find for the Defendant on the count of discrimination under the ADEA, you must find for the Defendant on this claim under state law.[12]

---

[12]  Hill v. Pinkerton Security Investigative Services, 977 F. Supp. 148, 153 (D. Conn. 1997); Levy v. CHRO, 236 Conn. 96, 103 (1996); Ann Howard's Apricot's Restaurant v. CHRO, 237 Conn. 209, 225 (1996).

### 8.    <u>DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA</u>

The Plaintiff has also brought a claim under a federal law called the Americans with Disabilities Act or "ADA".  The purpose of the ADA is to eliminate discrimination in employment against people who have physical or mental disabilities.    Under the ADA, an employer may not deny equivalent compensation, benefits or other terms, conditions and privileges of employment, or terminate or discipline  a qualified individual because of his or her disability.  In addition, an employer may not deny an otherwise qualified individual a reasonable accommodation for a known disability unless doing so would cause an undue hardship.

The Plaintiff, Gary Bedor, contends that Friendly Ice Cream Corporation transferred him to less desirable position, and later terminated him because of his disability- prostate cancer.   Friendly Ice Cream Corporation denies that Mr. Bedor's prostate cancer constituted a "disability" within the meaning of the ADA.  In addition, the Defendant, Friendly Ice Cream Corporation, denies that the decision to transfer and/or to terminate Mr. Bedor was made, in motivating part, because of his prostate cancer.

As I explained earlier, the fact that the Plaintiff has brought suit does not mean that he has suffered the wrong that he claims.  Mr. Bedor must prove his case, and you may not attach any weight to the mere fact that allegations of wrongdoing have been made.

In order to prove a violation of the ADA, Mr. Bedor must prove by the preponderance of the evidence that: (1) he was an individual with a disability within the meaning of the ADA; (2) that  he was qualified to perform his job;  (3) that an adverse employment action was taken against him; and (4) that his disability played a motivating role in Mr. Maglioli's decision to transfer him to a less desirable area and/or to terminate

20

him.[13]

---

[13] <u>Parker v. Sony Pictures Entertainment, Inc.</u>, 260 F.3d 100, 107 (2d Cir. 2001).

### 9A.    **THE FIRST FACTOR**

In the present case, Friendly Ice Cream Corporation admits that Mr. Bedor had

prostate cancer.     However, Friendly Ice Cream Corporation denies that this cancer

was a disability within the meaning of the ADA.    Not every person who has an illness or

an injury is considered disabled within the meaning of the ADA.     Therefore, the first

factor for you to consider, is whether or not Mr. Bedor's prostate cancer was a disability.

The question that you must answer is whether or not Mr. Bedor  met the definition

of a disabled individual at the time that the adverse action occurred- that is at the time

that he was transferred or at the time that he was terminated.[14]    In determining whether

or not Mr. Bedor was disabled at that time you cannot rely solely on his diagnosis of

cancer.   Cancer may be disabling for one person, and not for another.   You must

consider what effect  prostate cancer actually had on Mr. Bedor in determining whether

or not he had a disability within the meaning of the law.

In order to be protected by the ADA, Mr. Bedor's prostate cancer must have been

a physical or mental impairment that substantially limited one or more of his major life

activities at the time of the adverse actions.  Therefore, in order to be protected under

the ADA, Mr. Bedor must prove by the the preponderance of the evidence: (1) that his

prostate cancer is a physical impairment; (2) that the life activity upon which he relies is

a major life activity and (3) that his prostate cancer substantially limited him with respect

to that major life activity.[15]

––––––––––––––––––––

[14]  Monroe v. Cortland County, 37 F.Sup.2d 546, 550 (SDNY 1999); Saunders v. Webber Oil Co., 2000 U.S. Dist. LEXIS 21237 * 18 (D Me. 2000).

[15]42 U.S.C. §§ 12102(2);  Bragdon v. Abbott, 524 U.S. 624, 118 S.Ct. 2196, 2202, (1998); Lajeunesse v. Great Atlantic and Pacific Tea Co. Inc., 160 F.Sup.2d 324, 330-331 (D. Conn. 2001); citing Colwell ve. Suffolk County Police Dept., 158 F.3d 635,

The term "physical impairment" is defined as: "any physiological disorder or condition, cosmetic disfigurement or anatomical loss affecting one or more of the following body systems: neurological, neuromuscular, genitourinary, hemic, and lymphatic, skin, and endocrine".[16]  Physical impairments include, "such diseases and conditions as orthopedic, visual, speech, and hearing impairments, cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation,  emotional illness, and . . . drug addiction and alcoholism."  28 CFR § 41.31(a)(1) (1997).  Therefore, I instruct you that you must find that Mr. Bedor's prostate cancer is a physical impairment within the meaning of the ADA.

The term "major life activities" refers to basic life activities than an average person can perform with little or no difficulty. In determining whether something is a major life activity, the key question is the importance of the activity.  "Major life activities" refer to those activities that are of central importance to daily life. There is no complete list of major life activities, but they include such things as: caring for yourself, walking, seeing, hearing, speaking, breathing, sitting, standing, lifting, reaching, sleeping, learning, thinking, concentrating, and interacting with others.[17]

Mr. Bedor alleges that his prostate cancer, and the treatment that he underwent for this cancer  have interfered with his ability to perform the major life function of engaging in sexual relations.   I instruct you that you are to find that sexual relations are

---

641 (2d Cir. 1998).

[16]  29 CFR § 1630.2(h)(2); See MacGovern v. Hamilton Sundstrand Corp., 170 F.Supp. 2d 301, 308 (D. Conn. 2001); 28 CFR § 41.31(a)(1) (1997)..

[17]  29 CFR § 1630.2(i); Colwell v. Suffolk County Police Department, 158 F.3d 635, 642 (2d Cir. 1998) cert denied, 526 U.S. 1018, 119 S.Ct. 1253 (1999); Muller v. Costello, 187 F.3d 298, 312 (2d Cir. 1999); EEOC Enforcement Guidance on the ADA and Psychiatric Disabilities, No. 915.002, §3 (1997).

a major life activity within the meaning of the ADA.[18]

However, as I explained, Mr. Bedor's prostate cancer is only a disability within the meaning of the ADA if it  substantially limits his ability to engage in sexual relations.   A person is not considered disabled if he or she has an impairment that interferes with a major life activity in only a minor way"[19].  "Substantially limits means  "considerable" or "to a large degree."[20]   The question of whether the plaintiff's impairment substantially limits a major life activity depends on the impairment's nature and severity, its expected duration, and the  long term impact of the impairment or resulting from the impairment.[21]

A physical or mental impairment "substantially limits" one or more of a person's major life activities when it:

(1) renders the person unable to perform a major life activity that the average person could perform, or

(2) significantly restricts the person's ability to perform a particular major life activity as compared to the condition, manner or duration under which the average

---

[18]29 C.F.R. § 1630.2(i); 29 C.F.R. pt 1630, app 56 Fed Reg 35726, 35741 (July 26, 1991); Bragdon , 524 U.S. at 638;  Toyota Motor Mfg. Ky.,Inc. v. Williams, 534 U.S. 184, 196-197 (2002); McAldin v. County of San Diego, 201 F.3d 1211 (9th Cir. 2000), cert. denied, 530 U.S. 1243 (2000); Knutson v. AG Processing Inc., 2002 U.S. Dist. LEXIS 20940 at *31-32 (N.D.  Iowa, 2001); Treiber v. Lindbergh School Dist., 199 F.Sup.2d 949, 959 (E.D. Mo. 2002); Praseuth v. Newell-Rubbermaid Inc., 219 F.Sup.2d 1157 (D. Kan. 2002); Keller v. Board of Educ.. Of the City of Albuquerque, 182 F.Sup.2d 1148, 1155 (D.N.M. 2001);  Saunders v. Webber Oil Co., 2000 U.S. Dist. LEXIS 21237 (D. Me. 2000);  Anderson v. Gus Mayer Boston Store, 924 F.Sup. 763, 775, n.24 (E.D. Tex. 1996);Doe v. District of Columbia, 796 F.Sup. 559, 568 (D. D.C. 1992);; Hillyer v. Runyon, 95 F.Sup.2d 1016, 1021 (S. D. Iowa, 2000).  .

[19]Toyota Motor Mfg. Ky.,Inc. v. Williams, 534 U.S. 184, 196-197 (2002),

[20]Id.

[21] 29 CFR § 1630.2(j)(i), (ii). 29 C.F.R. § 1630.2(h); 29 C.F.R pt 1630, app, 56 Fed Reg 35726, 35741 (July 26,1991); 29 C.F.R. pt 1630, app 56 Fed Reg 35726, 35740 (July 26, 1991).

person could perform the same activity.

In  determining whether or not Mr. Bedor's prostate cancer substantially limited him with respect to the major life activity of sexual relations, as compared to the average person, you must consider both the positive and the negative impact of any treatment or medication that Mr. Bedor received. [22]   If after treatment or medication, a  person is no longer substantially limited in any major life function, then that person would not be considered disabled within the meaning of the ADA.   A good example of this might be someone with a severe visual loss that  is corrected  by glasses.   Without glasses, the person might have a substantial limitation on the major life activity of seeing.   However, with corrective lenses, the person may have no limitation or only a minor limitation. Because the impact of the impairment is corrected, that person would not have a disability within the meaning of the ADA.

However, a person could still have a substantial limitation on a major life activity, even after treatment.     An individual will also have a disability within the meaning of the Act,  if the negative side effects of the treatment  result in a substantial limitation on a major life activity".[23]   For example, the medication that a person might need to take to control a medical condition could cause a substantial limitation on the ability to sleep or concentrate.   That person could have a disability within the meaning of the ADA.

In fact, a condition like cancer can be a disability within the meaning of the ADA even if it

---

[22]Sutton v. United Air Lines, Inc., 527 U.S. 471, 119 S. Ct 2139, 144 L. Ed. 2d 450, 9 A.D. Cas (BNA) 673 (1999);  EEOC v. J.B. Hunt Transportation, Inc. (N.D.N.Y.2001) 128 F.Supp.2d 117, 125 n. 12, aff'd (2d Cir.2003) 321 F.3d 69; Kammueller v. Loomis Fargo &Co., 383 F.3d. 779, (8th Cir 2004);

[23]   Sutton, 527 US. at   at 488; Keller v. Board of Education, 182 F. Supp. 2d. 1148, 1155-1156, (D. New Mexico 2001);  EEOC v. Gallagher, 181 F.3d. 645, 654 (5th Cir. 1999); Gordon v. E.L. Hamm & Assoc. Inc., 100 F.3d. 907, 912 (1996);Treiber v. Lindbergh School District,199 F. Supp. 2d. 949, 960 (Ed. Mo. 2002).

is in remission, if the results of the cancer treatment still substantially limit a major life activity.[24]

Now, Mr. Bedor claims that after his treatment for prostate cancer, even with medication, he had a substantial limitation on the major life activity of sexual relations. He claims that the corrective measures he underwent to remove the active cancer- the removal of his prostate- significantly restricted his ability to engage in sexual relations as compared to the condition, manner or duration under which the average person in the general population could perform the same major life activity. The Friendly Ice Cream Corporation denies that Mr. Bedor was substantially limited at the time of the adverse actions. It is up to you to determine based on all of the evidence whether or not Mr. Bedor has proven by the preponderance of the evidence that at that time of these actions he was substantially limited with respect to his ability to engage in sexual relations. If you find that he has proven this by the preponderance of the evidence, you must find that he has a disability within the meaning of the ADA. If on the other hand, you find that he has not proven that any limitations were substantial, than you must find for the Defendant as to this claim.

---

[24] Leicht v. Hawaiian Airlines Inc., 77 F. Supp. 2d. 1134, 1147-1148, (D. Hawaiia 1999); Vendetta v. Bell Atlantic Corp., 1998 WL 575111 at *7(D. Pa. 1998); Demarah v. Texaco Group, Inc., 88 F. Supp.2d. 1150, 1155 (D. Col. 2000)

**9B.**    **THE SECOND FACTOR**

Next, an ADA Plaintiff must normally show by the preponderance of the evidence that he is a qualified individual with a disability. This means that he must prove that despite his disability he was capable of performing the essential functions of his position, with a reasonable accommodation if necessary. In the present case, it is undisputed that Mr. Bedor could perform the essential functions of his  job with the reasonable accommodation of being granted a temporary limitation on the distance he had to drive. Therefore, I instruct you that you must find for the Plaintiff as to this element.

### 9C.    THE THIRD FACTOR: AN ADVERSE EMPLOYMENT ACTION

As I explained earlier, an adverse employment action is any that constitutes a materially adverse change in the terms and conditions of the Plaintiff's employment.    I instruct you that you are to find that the Plaintiff was subjected to adverse employment actions. [25]

---

[25] Bedor v. Friendly's Ice Cream Corp., 2005 WL 2406012 (D. Conn. 2005); Burlington Industries Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 2268-2269 (1998); Richardson v. New York State Correctional Services, 180 f.3d. 426, 446, (2nd. Cir. 1999); Brown v. Cox, 286 F.3d. 1040, 145-1046 (8th Cir. 2002); Crady v. Liberty National Bank & Trust Co., 993 F.2d. 132, 136 (7th Cir. 1993); Flaherty v. Gas Research Institute, 31 F.3d. 451, 456 (7th Cir. 1994); Kocsis v. Multi-Care Management Inc., 97 F.3d. 876, 887 (6th Cir. 1996); Harlston v. McDonnell Douglas Corp., 37 F.3d. 379, 382 (8th Cir. 1994); Raffaele v. City of New York, 2004 WL 1969869 at *19 (EDNY 2004).

### 9D.  THE FOURTH FACTOR:  AN INFERENCE OF DISCRIMINATION

The final element which must be considered is whether or not Mr. Bedor has

proven by the preponderance of the evidence that  he was transferred or terminated

under circumstances giving rise to an inference that he was discriminated against

because of his  disability.

In order to establish this element, the Plaintiff must prove to you by a

preponderance of the evidence, that his cancer, or the Defendant's stereotypical beliefs

about his cancer,  or any disability-related discriminatory impulse by the defendant, was

one of the reasons for the defendant's decision.   Now, the Plaintiff does not have to

prove that  the Defendant was motivated by its belief that Mr. Bedor was substantially

limited with respect to the major life function of sexual relations.   In fact, it is not

necessary that Mr.  Bedor show that Friendly Ice Cream Corporation was even aware of

the specific life activities that were impacted by his cancer.[26]    All the Plaintiff needs to

prove is that his prostate cancer is a disability within the meaning of the ADA, and that he

was discriminated against because of this disability.

The Plaintiff claims that the Defendant discriminated against him because of his

disability   by transferring him- first to  a district much further from his home, which

contained restaurants that were performing poorly, and then when he was unable to

accept that position because he was recovering from treatment for cancer surgery- to a

temporary district.    Mr. Bedor also claims that Mr. Maglioli, on behalf of Friendly's Ice

Cream Corporation, discriminated against him because of his disability by terminating

---

[26] Monroe v. Cortland County NY, 37 F. Supp. 2d. 546, 552 (NDNY);Colwell, 158
F.3d at 644 n. 1;; Saunders v. Webber Oil Co., 2000 US D. Lexis 21237, at *18 (D. Me.
2000).

him.  The Defendant denies that the Plainitff's prostate cancer  was a factor in its decision to reassign and to terminate Mr. Bedor.[27]

In determining whether or not Mr. Bedor was discriminated against, you must apply the same analysis that I explained to you with respect to the FMLA and age discrimination claims.   As I previously explained to you, Mr. Bedor need not prove that his disability was the sole or exclusive factor motivating the Defendant.  Disability may be one of a number of factors that motivates an employer's decision.  Mr. Bedor is entitled to prevail if he proves that his disability played a motivating role in, or contributed to, the decision.[28]

Mr. Bedor is not required to produce direct evidence that he was discriminated against because of his disability.  An intent to discriminate may be inferred from the existence of other facts - that is it may be proven through circumstantial evidence.[29] Again, if you find that the Defendant's reasons are not worthy of belief, this alone may be sufficient to establish that Defendant's actions were taken with a discriminatory motive.  Resort to a pretextual explanation may  be viewed as evidence of discrimination.   This does not mean that you must view the Defendant's explanation in any particular way.   It is your role as a jury to analyze all the facts and circumstances and to determine, based upon this evidence, whether  Friendly Ice Cream Corporation  discriminated against Mr.

---

[27]Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1176-1177 (2nd Cir. 1996); Cosgrove v. Sears, Roebuck & Co., 9. F.3d 1933, 1039 (2nd Cir. 1993); Bedor v. Friendly's Ice Cream Corp., 2005 WL 2406012 (D. Conn. 2005).

[28]  See Parker, 260 F.3d at 108; Holtz v. Rockefeller & Co., 258 F.3d 62, 78-79 (2d Cir. 2001); Renz v. Grey Advertising, Inc., 135 F.3d 217, 220-222 (2d Cir. 1997).

[29]  See, e.g. Carlton v. Mystic Transportation, 202 F.3d 129, 135 (2d Cir. 2000) cert denied, 530 U.S. 1261, 120 S.Ct. 2718 (2000); Danzer v. Norden Systems, Inc., 151 F.3d 50, 56-57 (2d Cir. 1998).

Bedor because of his disability.    Again, you should not be swayed by sympathy because Mr. Bedor had cancer.  The question that you must answer is whether or not his prostate cancer was a factor that made a difference with respect to the Defendant's decision to reassign him to the temporary position or to terminate him.  In order to determine whether the Plaintiff's disability was a motivating factor in the Defendant's treatment of the Plaintiff, you should consider all of the evidence  that may be available.[30]

---

[30]Reeves v. Sanderson Plumbing Products Inc., 530 US 133, 143 (2000); Price Waterhouse v. Hopkins, 490 U.S. 228, 250-2, 109 S.Ct. 1775, 1791 (1989) (plurality opinion); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); O'Connor v. Consolidated Coin Caterers Corporation, 517 U.S. 308, 116 S.Ct. 1307 (1996); Potenza v. City of New York, 365 F. 3d 165167-168 (2nd. Cir.2004);  Gordon v. New York City Board of Education, 232 F.3d. 111 (2nd. Cir. 2000);  Danzer v. Norden Systems Inc., 151 F.3d 50, 54 (2nd Cir. 1998); Kirsch v. Fleet Street, LTD., 148 F.3d. 149, (2nd Cir. 1998); Norton v. Sam's Club, 145 F.3d 114, 118 (2nd Cir. 1998); Stern v. Trustees of Columbia University, 131 F.3d 305, 312 (2nd Cir. 1998); Stratton v. Department for the Aging for the City of New York, 132 F.3d 869 (2nd Cir. 1997); Renz v. Grey Advertising, 135 F.3d 217, 222 (2nd Cir. 1997); Luciano v. The Olsted Corporation, 110 F.3d 210, 215 (2nd Cir. 1997). Reed v. A.W. Lawrence & Co. Inc., 95 F.3d 1170, 1177 (2nd Cir. 1996);  Cronin v. AetnaLife Insurance Co., 46 F.3d 196, 203 (2nd Cir. 1995); Cabrera v. Jakabovitz, 24 F.3d 372, 380-83 (2d Cir. 1994) cert. denied 115 S. Ct. 205 (1994); Cosgrove v. SearsRobuck & Co., 9 F.3d. 1033 (2nd. Cir. 1993);  Ostroski v. Atlantic Mut. Ins. Companies, 968 F.2d 171, 180-1 (2d Cir. 1992); Owens v. New York Housing Authority, 934 F.2d 405, 409 (2d Cir.) cert denied, 112 S. Ct. 431 (1991);  Sumner v. US Postal Service, 899 F.2d. 203, 209 (2nd. Cir. 1990); Bedor v. Friendly's Ice Cream Corp.2005 WL 2406012 (D. Conn. 2005); Palma v. Pharmedica Communications Inc., 2003 WL 22750547 (D. Conn. 2003);  Rose v. James River Paper Company, 2 F. Supp. 2nd 245, 250 (D. Conn. 1998);Shkolnick v.  Combustion Engineering, Inc., 856 F.Supp. 82, 87 (D.Conn. 1994); Mann. v. Mass. Correa Elec. J.V., 2002 WL 88915 (S.D.N.Y. 2002);Sorrentino v. All Seasons Services, Inc., 246 Conn. 756 (1998); Ford v. Blue Cross and Blue Shield of Connecticut, Inc., 216 Conn. 40 (1990); Oakes v. New England Dairies, Inc., 219 Conn. 1 (1991).

10.    **DISABILITY DISCRIMINATION UNDER CFEPA**

Finally, the Plaintiff has  brought a claim of disability discrimination under state law.   As with his ADA claim, Gary Bedor contends that Friendly Ice Cream Corporation transferred him to less desirable position, and later terminated him because of his prostate cancer.   The only difference between this claim and the Plaintiff's disability discrimination claim under the ADA is the definition of disability.    Connecticut has defined "disability" differently than Congress.

In order to prove a violation of CFEPA,   Mr. Bedor must still prove by the preponderance of the evidence that: (1) he was an individual with a disability; (2) that  he was qualified to perform his job;  (3) that an adverse employment action was taken against him; and (4) that his disability played a motivating role in Mr. Maglioli's decision to transfer him to a less desirable area and/or to terminate him.[31]   However, you must find that Mr. Bedor is disabled under Connecticut law, if he,

> has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device.

Conn. Gen. Stat.  §46a-51(15)(emphasis added).

In order to be considered disabled under Connecticut law, the Plaintiff does not need to prove any substantial limitation on any major life function.   This is because Connecticut law is broader than federal law.[32]   However, he must prove by the

---

[31] Parker v. Sony Pictures Entertainment, Inc., 260 F.3d 100, 107 (2d Cir. 2001).

[32] Beason v. United Technologies Corp., 337 F.3d. 277 (2nd. Cir. 2003).

preponderance of the evidence that any infirmity, impairment or handicap is "chronic". Chronic is defined as , "of long duration, or characterized by slowly progressive symptoms; deep seated or obstinate, or threatening a long continuance; distinguished from acute."[33]

Again the Plaintiff's physical disability in this case is cancer.  The Plaintiff claims that his cancer, and that the treatment of this illness resulted in permanent erectile dysfunction.  If you find that Mr. Bedor has not proven by the preponderance of the evidence that he has a disability with the meaning of the Connecticut act, you must find for the defendant.   If you find that Mr. Bedor has proven that he has a disability with the meaning of the Connecticut act, you must consider the other elements of a claim for discrimination.

As I have explained, it is undisputed that Mr. Bedor could perform the essential functions of his  job and that he suffered adverse employment actions.   Therefore, you need only consider whether or not Mr. Bedor has proven that he was discriminated against because of his disability.

It is up to you to decide based on all of the evidence and on the law as I have previously explained it to you, whether the Plaintiff has proven that his disability played a

---

[33] Gilman Bros. v. Conn. Comm'n on Human Rights & Opportunities, 1997 WL 275578 (Conn.Super.Ct.1997); Connor v. McDonald's Inc., 2003 WL 1343253 (D.Conn. 2003); Medvey v. Oxford Health Plan, 2005 WL2300379 (D.Conn.2005); Hill v. Pfizer Inc., 266 F.Supp.2d. 352 (2003); Shaw v. Greenwicxh Anesthesiology Assoc. 137 F. Supp.2d. 48, 65-66 (D. Conn. 2001).

motivating role in, or contributed to, the decision to transfer him or to terminate him. [34]  If

you find that Mr. Bedor has proven this by the preponderance of the evidence, you must

find for the Plintiff as to this claim.   However, if you find that the Plaintiff has not proven

that his disability was a factor that made a difference, you must find for the Defendant as

to this claim.[35]

_____

[34]  See Parker, 260 F.3d at 108; Holtz v. Rockefeller & Co., 258 F.3d 62, 78-79 (2d Cir. 2001); Renz v. Grey Advertising, Inc., 135 F.3d 217, 220-222 (2d Cir. 1997).

[35]Reeves v. Sanderson Plumbing Products Inc., 530 US 133, 143 (2000); Price Waterhouse v. Hopkins, 490 U.S. 228, 250-2, 109 S.Ct. 1775, 1791 (1989) (plurality opinion); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); O'Connor v. Consolidated Coin Caterers Corporation, 517 U.S. 308, 116 S.Ct. 1307 (1996); Potenza v. City of New York, 365 F. 3d 165167-168 (2nd. Cir.2004);  Gordon v. New York City Board of Education, 232 F.3d. 111 (2nd. Cir. 2000);  Danzer v. Norden Systems Inc., 151 F.3d 50, 54 (2nd Cir. 1998); Kirsch v. Fleet Street, LTD., 148 F.3d. 149, (2nd Cir. 1998); Norton v. Sam's Club, 145 F.3d 114, 118 (2nd Cir. 1998); Stern v. Trustees of Columbia University, 131 F.3d 305, 312 (2nd Cir. 1998); Stratton v. Department for the Aging for the City of New York, 132 F.3d 869 (2nd Cir. 1997); Renz v. Grey Advertising, 135 F.3d 217, 222 (2nd Cir. 1997); Luciano v. The Olsted Corporation, 110 F.3d 210, 215 (2nd Cir. 1997). Reed v. A.W. Lawrence & Co. Inc., 95 F.3d 1170, 1177 (2nd Cir. 1996);  Cronin v. AetnaLife Insurance Co., 46 F.3d 196, 203 (2nd Cir. 1995); Cabrera v. Jakabovitz, 24 F.3d 372, 380-83 (2d Cir. 1994) cert. denied 115 S. Ct. 205 (1994); Cosgrove v. SearsRobuck & Co., 9 F.3d. 1033 (2nd. Cir. 1993);  Ostroski v. Atlantic Mut. Ins. Companies, 968 F.2d 171, 180-1 (2d Cir. 1992); Owens v. New York Housing Authority, 934 F.2d 405, 409 (2d Cir.) cert denied, 112 S. Ct. 431 (1991);  Sumner v. US Postal Service, 899 F.2d. 203, 209 (2nd. Cir. 1990); Bedor v. Friendly's Ice Cream Corp.2005 WL 2406012 (D. Conn. 2005); Palma v. Pharmedica Communications Inc., 2003 WL 22750547 (D. Conn. 2003);  Rose v. James River Paper Company, 2 F. Supp. 2nd 245, 250 (D. Conn. 1998);Shkolnick v.  Combustion Engineering, Inc., 856 F.Supp. 82, 87 (D.Conn. 1994); Mann. v. Mass. Correa Elec. J.V., 2002 WL 88915 (S.D.N.Y. 2002);Sorrentino v. All Seasons Services, Inc., 246 Conn. 756 (1998); Ford v. Blue Cross and Blue Shield of Connecticut, Inc., 216 Conn. 40 (1990); Oakes v. New England Dairies, Inc., 219 Conn. 1 (1991).

11. **DAMAGES - GENERAL PRINCIPLES**

Now if you have found for the Defendant on each of the Plaintiff's claims, you need not consider damages.  However, if you have found for the Plaintiff on any of his claims, you must next consider the issue of damages.  You should bear in mind that the Plaintiff has the burden of proving by the preponderance of the evidence both that he was damaged and the extent of those damages.  The amount of damages must be reasonably calculated to make him whole for the injuries that he has suffered as a result of any violations that you might find.

Before I instruct you on the issue of damages, a few words of caution are in order. In the final arguments, counsel have stated a certain sum of money which they claim should be awarded by you.  Now counsel has the right to make such a claim, but such argument is not evidence, and the award of damages is solely your function. The fact that I am instructing you on the subject of damages does not mean that I have an opinion one way or the other on whether you should or should not reach the issue of damages in your deliberations.  Instructions on damages are given for your guidance in the event you do reach the issue of damages.  The issue of damages should only be considered in the event you find in favor of the Plaintiff in accordance with the other instructions I have given you.  Whether you should or should not reach the issue of damages with regard to the Plaintiff is for you to decide.

You must not construe the Defendant's presentation of evidence on the issue of damages to be an admission that they are liable or that the Plaintiff is entitled to any damages.  The Defendant is required to address the issue of damages or it would have

lost its opportunity to do so.  You should only consider the issue of damages - and the

evidence presented on that issue - if you determine that the Defendant violated the

Plaintiff's rights.[36]

---

[36] Ford v. Blue Cross and Blue Shield of Connecticut, Inc., 216 Conn. 40 (1990);
Oakes v. New England Dairies, Inc., 219 Conn. 1 (1991); Sorrentino v. All Seasons
Services, Inc., 246 Conn. 756 (1998);  Levy v. CHRO, 236 Conn. 96, 103 (1996)..

## 12. <u>DAMAGES - ECONOMIC LOSSES</u>

If you find for Mr. Bedor on his claim that he was retaliated against because of his having taken a medical leave or that he was discriminated against because of his age or disability he is entitled to be made whole for any resultant economic losses.  These economic damages include any lost wages  from the date of Mr. Bedor's  termination until now.

You may award damages for lost wages  only for injuries to the Plaintiff proved were caused by the Defendant's wrongful conduct. The damages that you award must be fair compensation, no more, no less.

The law places the burden of proof as to this element on Mr. Bedor.  While it is not necessary that Mr. Bedor prove the amount of any damages with mathematical precision, he is required to present such evidence as might reasonably be expected to be available under the circumstances.  You are permitted to determine the amount of damages by estimation or approximation, as long as a reasonable basis for estimation or approximation is shown with reasonable certainty.

In calculating these damages, you should include in the amount any salary increases and bonuses as well as benefits you may find that the Plaintiff would have received had he not been terminated.  You should deduct from this amount any earnings which the Plaintiff has had from other employment since the date of his termination.    In making this award, you may take into account the number of hours the Plaintiff has had to work in his other employment.  The amount of damages must be reasonable and must be  calculated to make the Plaintiff whole for the injuries he has suffered as a result of

any violation that you have found.[37]

   If you find that Mr. Bedor was discriminated against in violation of the ADEA or ADA and suffered economic losses as a result of this, you must determine the amount of such losses even if you have also determined an award for economic losses for a violation of the FMLA.   Do not be concerned that you may be compensating him twice for the same economic injury.   That is something for the Court to address.   This is not to say that I am suggesting that you should find any particular way as to these matters- that is for you to determine.

---

[37]Ford v. Blue Cross and Blue Shield of Connecticut, Inc., 216 Conn. 40 (1990); Oakes v. New England Dairies, Inc., 219 Conn. 1 (1991); Sorrentino v. All Seasons Services, Inc., 246 Conn. 756 (1998); Albemarle Paper Co. v. Moody, 422 U.S. 405, 418-19 (1975); Mertens v. Hewitt Associates, 508 U.S. 248, 113 S. Ct. 2063, 2064 (1993); Abermarle Paper Co. v, Moody, 422 U.S. 405, 419 (1975); EEOC v. Wilson Metal Casket Co., 24 F.3d 836, 841 (6th Cir. 1994); Sands v. Runyon, 28 F.3d 1323, 1327 (2nd Cir. 1994); Thurston v. TWA, 713 F.2d 940; 956 (2nd Cir. 1983), aff'd in part 469 U.S. 111 (1985); Carey v.  Piphus, 435 U.S. 247, 98 S. Ct. 1042 (1978); Bernheim v.  Litt, 79 F.3d 318, 325-6 (2nd Cir. 1996); Modern Federal Jury Instructions, §104.06 87-87. Conn. Gen. Stat. §37-3b;   Collier v. State of CT, Dept. of Public Safety, 1999 WL 300643 (Conn. Supp. 999); Gaudio v. Griffin Health Services Corp., 249 Conn. 523 (1999); Bernheim v.  Litt, 79 F.3d 318, 325-6 (2d Cir. 1996); Modern Federal Jury Instructions, §104.06 87-87..Devitt, Blackmar & Wolff, Federal Jury Practice Instructions, .(1987) Vol. 3 Civil (1995 Pocket Part) §104.06 p. 164; see, 29 U.S.C. §1981a(b)(2).  See Also: The Award of Damages Under the Family and Medical Leave Act, 176 A.L.R. 591 (2002-2005).

13.    **MITIGATION OF DAMAGES**[38]

Even if you find that the Defendant, by its actions, has harmed the Plaintiff, the Plaintiff is also obligated to use reasonable care to minimize the resulting losses and damages caused by the Defendant's actions.  A person who is damaged as a result of wrongful conduct by another has a duty under the law to use reasonable efforts to mitigate his damages. The obligation, to mitigate damages, however, is not an onerous one.  An employee need not go into another line of work, accept a demotion, or take a demeaning position.  He also need not apply for or accept positions while his physicians advise him that he is physically unable to work.

The Plaintiff does not have to prove that he used reasonable care to minimize his losses.   Instead in this instance the  burden is on Friendly's Ice Cream Corporation  to prove, by the preponderance of the evidence,  that the Plaintiff has not satisfied his duty to minimize his damages.  For you to find that the Plaintiff failed to minimize or mitigate his damages, the Defendant must prove to you two things with regard to Mr. Bedor.   First, the Defendant must show that he did not use reasonable diligence in seeking employment.  A Plaintiff fails to use reasonable diligence when he could have sought employment at the same or comparable salary level and did not.  Second, the Defendant must also prove to you that if Mr. Bedor had  exercised such diligence, there was a reasonable likelihood that he would have found comparable work.

---

[38]  The Plaintiff does not believe that the evidence in this case is sufficient to support a finding that he failed to mitigate his damages and therefore no jury charge should be given on this subject.  This proposed jury instruction is being provided for consideration only in the event the Court disagrees and determines that sufficient evidence exists to submit the failure to mitigate defense to the jury.

Only if you find that Friendly's Ice Cream Corporation  has proven both that the Plaintiff failed to look for comparable work, <u>and</u> that the Plaintiff could have found comparable work if he did look for it, may you find that the Plaintiff failed to mitigate his damages.  If you find that the Plaintiff could have obtained comparable employment if he continued to look and that he unreasonably failed to do so, then you should deny recovery for the period of time after which he stopped looking because he would have failed to mitigate his damages with regard to that time period.

If you find that there were substantially equivalent positions available to Mr. Bedor, that Mr. Bedor did not take reasonable steps to minimize his damages, and that if he had taken such steps he would have found a substantially equivalent position, then you may reduce the total damages by the amount you believe they would have been reduced had the Plaintiff taken such steps.  In deciding whether to reduce Mr. Bedor's damages due to a failure to mitigate, you should weigh all the evidence in the case.  If a failure to mitigate damages has been proven, you may consider that failure in determining the amount of damages that should be paid.[39]

---

[39]    <u>Ford Motor Co. v. E.E.O.C.</u>,458 U.S. 219, 231 (1982); <u>Clarke v. Frank</u>, 960 F.2d 1146, 1152 (2d Cir. 1992); <u>Dailey v. Societe Generale</u>, 108 F.3d 451, 456 (2d Cir. 1997); <u>Hawkins v. 1115 Legal Service  Care</u>, 163 F.3d  684, 695-696 (2d Cir. 1998); <u>Brooks v. Fonda-Fultonville Cent. School Dist</u>., 938 F.Supp. 1094,1109, (N.D.N.Y. 1996) <u>Bonura v. Chase Manhattan Bank, N.A.,</u> 629 F.Supp. 353, 356 (S.D.N.Y. 1986); <u>Ann Howard's Apricots Restaurant</u> , 237 Conn 209, 229 (1996); <u>Preston v. Keith</u>, 217 Conn 12, 21-22 (1991).

**14.    PREJUDGEMENT INTEREST**[40]

If you find that the Plaintiff is entitled to an award of damages for his economic

losses under the FMLA or under the ADA, ADEA, or CFEPA you should award interest to

the Plaintiff on such damages as you have determined.  Interest may be awarded to

compensate a Plaintiff for the loss of use of money which was not paid when due.  Given

that the purpose of back pay is to make the Plaintiff whole, you may find it necessary to

award interest to compensate Plaintiff for the loss of the benefit of his back pay to date.

The interest allowed is the average annual United States Treasury bill rate from the date

of the lost wages to the date of your award.  The average annual United States Treasury

bill rate from August 2000  until today is _____.

This interest runs from the time that the money was due.  Therefore if you find for

the Plaintiff on the issue of economic damages and award damages for any loss of pay,

you may add to such damages interest at a rate of ____  percent a year from the date the

loss of pay was suffered. [41]

---

[40]  The FMLA authorizes a district court to grant pre-judgment interest on a back pay award.  29 U.S.C. §2617 (a)(1)(ii).  Under the discrimination statutes the calculation of interest is ordinarily left to the court.   See, Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 145 (2d Cir. 1993); Brennlav. LaSora Buick Pontiac Chevrolet Inc., 2002 WL 1059117 (SDNY 2002)    This instruction is submitted in the event that the court in its discretion submits the issue to the jury.

[41]  Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 145 (2d Cir. 1993); O'Quinn v. New York University Med. Center, 933 F. Supp. 341 (S.D.N.Y. 1996); Dailey v. Societe Generale, 889 F.Supp. 108 (S.D.N.Y. 1996); McIntosh v. Irving Trust Co., 873 F. Supp. 872 (S.D.N.Y. 1995).

### 15.    LIQUIDATED DAMAGES UNDER THE FMLA[42]

If you have found that the Defendant retaliated against the Plaintiff for his exercise

of rights protected under the FMLA, you must also consider the issue of liquidated

damages.  Liquidated damages under the FMLA are considered compensatory rather

than punitive in nature.   Liquidated damages are to be awarded unless  Friendly Ice

Cream Corporation has proven to you, by the fair preponderance of the evidence, that

boththe actions and omissions that you found to be in violation of the FMLA were done in

good faith and that they had reasonable grounds for believing that their conduct was <u>not</u> in

violation of the FMLA.  If you find that Friendly's Ice Cream Corporation has proven both

that it acted in good faith and that it had a reasonable belief that its conduct did not violate

the FMLA, then you must award Mr. Bedor nothing in liquidated damages.     However, if

Friendly Ice Cream Corporation has not proven both of these elements by the

preponderance of the evidence, and you have found that Friendly's Ice Cream

Corporation violated the FMLA, you should award an amount equal to the total amount of

lost wages, and interest that you have found that Mr. Bedor suffered as a result of the

---

[42]Liquidated damages are mandatory under the FMLA, unless the jury finds both that the act or omission that violated the FMLA was made in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of the FMLA.  29 U.S.C. §2617(a)(1)(A)(iii); <u>Palma v. Pharmedica Communication Inc.</u>, 2003 WL 22750600(D. Conn. 2003).  The factual issue- whether or not the act or omission that violated the FMLA was made in good faith and whether or not the employer had reasonable grounds for believing that the act or omission was not a violation of the FMLA should be submitted to the jury.   However, the Plaintiff believes that the award of such benefits must be left to the Court.   29 U.S.C. §2617(a)(1)(A)(iii); <u>Palma v. Pharmedica Communication Inc.</u>, 2003 WL 22750600(D. Conn. 2003).  The Plaintiff requests that the jury simply be given an interrogatory asking if the Defendant had proven that its conduct was both made in good faith and that it had reasonable grounds for believing that it was not violating the FMLA.   This instruction is submitted only in the event that the Court, in its discretion, decides to submit the amount of liquidated damages to the jury.

Defendant's retaliation.[43]

_____

[43]29 U.S.C. §2617(a)(1)(A)(iii); <u>Palma v. Pharmedica Communication Inc.</u>, 2003 WL 22750600 (D. Conn. 2003).

16.    **WILLFULNESS**

If you have found that the Defendant discriminated against the Plaintiff because of his age or disability, you must next consider liquidated or punitive 0damages  for this violation.   Now this type of damages is different that liquidated damages under the FMLA.  As I explained to you a moment ago, under the FMLA, the Defendant must show that its conduct was made in good faith and  based on a reasonable belief that the FMLA was not being violated.   This is not the standard under the ADEA or under the ADA.

The Plaintiff claims that the acts of Defendant Friendly's Ice Cream Corporation were done willfully, intentionally, or with callous and reckless indifference to Mr. Bedor's rights under the ADEA or ADA.   If you find that this is the case, under the standard I will explain to you, the Defendant's wilful violation of the law would entitle him to an award of additional liquidated or punitive damages.

The purpose of an award of punitive damages is, first, to punish a wrongdoer for misconduct, and second, to warn others against doing the same.   To establish a willful violation of the ADEA or ADA , the Plaintiff is not required to show any especially egregious or aggravated circumstances associated with the Plaintiffs termination. However, to establish a willful violation of the ADEA or ADA, the Plaintiff must prove more than that he was discriminated against.

A violation is not wilful if it is done by accident, inadvertence, or ordinary negligence.  To show a wilful violation, the Plaintiff must prove by a preponderance of the evidence that when the Defendant discriminated against him, it knew that it's  conduct violated the law or that it  showed reckless disregard as to whether it was violating the law.  An employer acts with "reckless disregard" of its obligations under the law if it shows disregard for the law and acts with indifference to legal requirements.

44

In determining whether the Defendant's conduct was wilful, you should assess whether the Defendant acted in reckless disregard of the law or of the consequences which might follow from its conduct, such as the Plaintiff's resulting economic losses, physical suffering and/or emotional distress.  Keep in mind that, when I speak of the conduct of Defendant Friendly Ice Cream Corporation, I am referring to the conduct of individual Friendly's management employees.  You must determine whether the Defendant's conduct was wilful.  In doing so, you must consider what occurred in light of all of the facts involved.

If you find that the Defendant acted willfully, then the Plaintiff is entitled to an award of liquidated damages under the ADEA and/or ADA punitive damages under the ADA. You may award the Plaintiff liquidated damages in an amount up to, but not more than, the amount of damages you have awarded to him for his economic losses under ADA, you can award damages up to or even the amount of economic damages.  This is not to suggest that you should do so.   In determining the amount of any liquidated or punitive damages you might choose to award you should bear in mind the purpose of such damages.  That is, you should award an amount that you feel is fair to punish the Defendant for the wrongdoing you have found and to warn others not to engage in the same conduct.[44]

---

[44] Kolstad v. American Dental Association, 1999 WL 407481, 67 USLW 3682 (1999); 42 U.S.C. §1981(a)(b); Thurston v. TWA, 469 U.S. 111 (1985); Hazen Paper Products v. Biggens, 507 U.S. 604, 113 S.  Ct.  1701 (1993); Reichmen v.  Bonsignore & Mazzotta, 818 F.2d 278, 281-2 (2d Cir.  1987).  Thurston v. TWA, 469 U.S. 111 (1985); Hazen Paper Products v. Biggens, 507 U.S. 604, 113 S.Ct.  1701 (1993); Paolitto v. John Brown E&C, Inc., 151 F.3d 60 (2nd Cir. 1998); Padilla v. Metro-North Commuter Railroad, 92 F.3d 117 (2d Cir. 1996); Woodhouse v. Magnolia Hospital, 92 F.3d 248 (5th Cir. 1996); Devitt & Blackmar; pocket part §104.07; Thornley v. Penton Publishing, Inc., No. 2:92-CV-51 (RNC), Charge of the Jury, 4/28/95, p. 15-16.

### 17.    <u>COMPENSATORY DAMAGES</u>

The final type of damages that you must consider is called compensatory

damages.  If you find that Mr. Bedor has proven his claims of age discrimination, or

disability discrimination, then  he is entitled to damages called compensatory damages.

Such damages include compensation for any humiliation, emotional pain, suffering,

inconvenience, mental anguish, or loss of enjoyment of life that you find the Plaintiff

experienced as a consequence of the Defendant's illegal conduct.

Again, it is not necessary for the Plaintiff to prove his emotional distress with

mathematical precision, as long as he has presented the type of evidence you might

reasonably expect to be available under the circumstances.  No evidence of monetary

value of such intangible things as pain and suffering need be introduced into evidence.

You are permitted to determine the amount of damages by estimation or approximation,

as long as a reasonable basis for estimation or approximation is shown with reasonable

certainty.

In determining the amount of any damages that you decide to award, you should

be guided by common sense.  You must use sound judgment in fixing an award of

damages, drawing reasonable inferences from the facts in evidence.  You may not award

damages based on sympathy, speculation, or guess work.  On the other hand, the law

does not require that the Plaintiff prove the amount of his losses with mathematical

precision, but only with as much definiteness and accuracy as circumstances permit.

There is no exact standard for fixing the  compensation to be awarded for these elements

of damages.  Instead, any award that you make should be fair in light of the evidence

presented at trial.[45]

RESPECTFULLY SUBMITTED,
FOR THE PLAINTIFF,

By:  _____
Mary E. Kelly ct07419
Thomas W. Meiklejohn ct08755
Livingston, Adler, Pulda,
Meiklejohn & Kelly, P.C
557 Prospect Avenue
Hartford, CT 06105
(860) 233-9821

---

[45] Schanzer v. UTC, 120 F. Supp.2d. 200 (D. Conn. 2000); Ragin v. Laidlaw Trans. Inc., 1999 WL 977603 (D. Conn. 1999).

## <u>CERTIFICATE OF SERVICE</u>

This hereby certifies that the foregoing Plaintiff's Proposed Charge to the Jury was mailed on this 24th day of March 2006 first-class mail, postage pre-paid to all counsel of record as follows:

Warren L. Holcomb
Floyd J. Dugas
Berchem, Moses & Devlin, P.C.
75 Broad Street
Milford, CT 06460

_____
Mary E. Kelly