UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GARY BEDOR                               :          CIVIL NO.: 301 CV 2146 (AWT)
    Plaintiff                        :
                                     :
                                     :
v.                                       :
                            :        :
FRIENDLY'S ICE CREAM                     :
CORPORATION                              :
    Defendant                        :          March 29, 2006

## DEFENDANT'S PROPOSED JURY CHARGES

The plaintiff Gary Bedor claims that the defendant Friendly Ice Cream Corporation retaliated against him because he took a medical leave of absence in violation of a federal statute known as the Family and Medical Leave Act. The plaintiff also claims that the defendant discriminated against him because of his age in violation of a federal statute known as the Age Discrimination in Employment Act and a Connecticut statute known as the Connecticut Fair Employment Practices Act. I will read you relevant portions of those statutes later in these instructions.

The defendant denies that neither the plaintiff's age nor the medical leave of absence that he took played any part in any of the decisions that they made with regard to him.

Each of the plaintiff's claims is separate and distinct and you should consider each claim separately. I will explain the law with respect to each claim.

1.   **GENERAL PRINCIPLES OF AGENCY** (Supplement to Court's Standard
Instructions)

The defendant in this action is a corporation, and corporations act through their
employees. In this case, it is not disputed that Mr. Maglioli was acting within the scope
of his employment when he made decisions regarding the plaintiff. If you find that Mr.
Maglioli retaliated or discriminated against the plaintiff because he took a medical leave
of absence or because of his age, then I instruct you that the defendant is liable for his
conduct. I am not suggesting that the defendant is liable. Whether or not the plaintiff
was discriminated against or retaliated against as he claims is a matter for you to decide
based on all the evidence and in accordance with these instructions. I am only
instructing you that you must find that the defendant Friendly Ice Cream Corporation is
legally responsible if you find that Mr. Maglioli discriminated against or retaliated against
the plaintiff, Mr. Bedor.

2.   **RETALIATION FOR EXERCISING RIGHTS UNDER THE FMLA**

The plaintiff claims that the defendant retaliated against him in violation of the
Family and Medical Leave Act, which I will refer to as the FMLA. Under the FMLA an
eligible employee is entitled to take up to a total of twelve work weeks of leave during
any twelve-month period due to, among other things, a serious health condition that
makes the employee unable to perform the functions of his or her job position.[1]

The FMLA statute further provides that at the end of the leave, the employee is
entitled (a) to be restored by the employer to the position of employment held by the
employee when the leave commenced, or (b) to be restored to an equivalent position

---

[1] 29 U.S.C. §2612(a)(1)(D).

{00061692.DOC}                                    2

with equivalent employment benefits, pay and other terms and conditions of employment.[2]

However, the FMLA statute also provides that an employee is not entitled to "any right, benefit or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken the leave." In other words, an employee on FMLA leave is not entitled to any greater benefit or job security than if he had not taken the leave.[3]

Under the FMLA statute, an employer is prohibited from retaliating against an employee who has taken FMLA leave.[4]

In this case, the plaintiff is contending that the defendant retaliated against him by restoring him to a position that was not an equivalent position at the end of his FMLA leave. The plaintiff is also claiming that the defendant terminated him in retaliation for his having taken a medical leave which he was entitled to take under the FMLA. These are two separate claims, which you must consider separately.

To prevail on his claims that he was retaliated against in violation of the FMLA, the plaintiff must prove by a preponderance of the evidence, first that he exercised his right to take a medical leave under the FMLA and the employer was aware that he did so; second that he was adversely affected by an employment decision; and third that there was a causal connection between employer's adverse employment action and his having taken a medical leave under the FMLA.[5]

---

[2] 29 U.S.C. §2614(a)(1).
[3] 29 U.S.C. §2614(a)(3)(b).
[4] 29 CFR §825.220(c).  29 U.S.C. §2615(a)(1).
[5] Palma v. Pharmedic Communications, Inc., 2002 WL 320932753 *4 (D.Conn.).

In this case, the defendant concedes that the first element has been met. The defendant acknowledges that the plaintiff took an authorized medical leave of absence under the FMLA and that it was fully aware that he did so. Therefore, you must find that the plaintiff has proved the first element which is that he took a medical leave under the FMLA and that the defendant was aware that he did.

With regard to the second element, that the plaintiff must prove that he was subjected to an adverse employment action. In this case, the plaintiff makes two separate and distinct claims. The plaintiff's first claim is that the defendant assigned him to a less desirable position, not an equivalent one. The defendant maintains that the position that the plaintiff held prior to his medical leave was eliminated during a reorganization which occurred while the plaintiff was out on leave and that when the plaintiff returned he was offered an equivalent position which he declined and then was assigned to another position which was also equivalent to his former position.

The plaintiff's second claim under the FMLA is that he was terminated in retaliation for his having taken medical leave. Termination of employment regardless of whether it is a layoff or discharge qualifies as an adverse employment action and you must find that it is.

With respect to the last element that must be proved for the plaintiff to prevail on his claims that he was retaliated against in violation of the FMLA, the plaintiff must demonstrate by a preponderance of the evidence that the exercise of FMLA rights, in other words, his having taken a medical leave of absence under the FMLA, was a substantial or motivating factor in the defendant's decision to terminate him.[6]   The

---

[6] Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) ("a retaliatory motive must be at least a 'substantial' or 'motivating factor' behind the adverse action."); Watson v. E. S. Sutton,

FMLA does not protect an employee from adverse employment action motivated by the underlying medical condition.[7]

To establish the causation element, the plaintiff does not need to prove that his having taken a medical leave was the only motivation in the defendant's decision or even that it was the primary motivation, only that it played a role in the defendant's decision.[8] If you find that the plaintiff has failed to establish, by a preponderance of the evidence, that his taking medical leave under the FMLA was a substantial or motivating factor for the defendant's decision to terminate him, your verdict must be against the plaintiff and in favor of the defendant. On the other hand, if you find that the plaintiff's medical leave of absence was a substantial or motivating factor in the decision to terminate him, then your verdict must be for the plaintiff unless you find that the defendant has shown that the plaintiff would have been terminated regardless of whether he took the medical leave of absence. If you find that the taking of the medical leave by the plaintiff was a substantial or motivating factor in the decision to terminate his employment but that the termination would have occurred even if he had not taken the medical leave, then your verdict must be for the defendant.[9]

In deciding whether the leave was a substantial or motivating factor in the defendant's decision to terminate the plaintiff's employment, you may consider all facts and circumstances shown by the evidence.

Comment:  The defendant's position is that the Court should not mention any specific circumstance or circumstances that the jury may consider in deciding the causation issue

---

Inc., 2005 WL 2170659, *11-12 (S.D.N.Y.);

Medley v. Polk Co., 260 F.3d 1202, 1203-04 (10th Cir. 2001)

[7] Hoge v. Honda of Am. Mfg., Inc. 384 F.3d 238 (6th Cir. 2004)

[8] Rainola v. Bratton, 243 F.3d 610, 625  (2d Cir. 2001) (Title VII retaliation claim)

[9] Id.

because doing so necessarily highlights those particular circumstances and gives them undue emphasis to the detriment of other circumstances not specifically mentioned, which would lead the jurors to give undue weight to the specific circumstances singled out by the Court which could be prejudicial.    The jurors can apply their common sense and experiences, and a separate instruction covers credibility.  If any specific circumstance, for example, temporal proximity, is mentioned, then all circumstances that the jury could consider should be listed to avoid giving undue emphasis to the circumstance(s) singled out by the Court.

It is up to you to decide, based on all of the evidence presented, whether or not the plaintiff has proven that it is more likely than not that the defendant acted with a retaliatory motive.    In reaching you conclusion, you must remember that it is not your role to decide whether the defendant treated the plaintiff fairly or unfairly.  You cannot find for the plaintiff simply because you feel sorry for him or to reward him for past services to the defendant or because of some general feeling that he deserved better from her employer or you feel he was not treated fairly. Under the FMLA, an employer has a right to terminate an employee or change an employee's assignment and duties for good reasons, bad reasons, or even for no reason at all, as long as its decision is not based on the employee's having taken a medical leave.    Your sole responsibility is to decide whether the plaintiff was subjected to retaliation because of his having taken a medical leave under the FMLA and if so, whether the defendant would have made the same decisions even if the plaintiff had not taken a medical leave of absence.[10]

As you know, the defendant contends that the plaintiff's reassignment to a new area when he returned from his medical leave was the result of a corporate reorganization.  Employers are entitled to conduct such reorganizations and reductions

---

[10] Reeves v. Sanderson Plumbing Products Inc., 530 US 133, 143 (2000); Price Waterhouse v. Hopkins, 490 U.S. 228, 250-2, 109 S.Ct. 1775, 1791 (1989) (plurality opinion); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); O'Connor v. Consolidated Coin Caterers Corporation, 517 U.S. 308, 116 S.Ct. 1307 (1996); Potenza v. City of New York, 365 F. 3d 165167-168 (2d Cir.2004);  Gordon v. New York City Board of Education, 232 F.3d. 111 (2d Cir. 2000)

in their workforces, and it is not for you to question the wisdom of that business decision.  However, if you conclude, based upon the evidence, that the defendant conducted a reorganization and the plaintiff's reassignment and the elimination of his position were part of the reorganization, you may still find for the plaintiff but only if he has proven by a preponderance of the evidence that notwithstanding the reorganization his having taken medical leave under the FMLA was a substantial or motivating factor in the defendant's decisions to reassign and/or terminate his employment and that such actions would not have been taken if the plaintiff had not taken a medical leave of absence.[11]

### 3.   ADEA CLAIM

The plaintiff has also brought a claim under a federal law which is known as the Age Discrimination In Employment Act which I will refer to in these instructions as the ADEA.  The ADEA provides that "it shall be unlawful for an employer to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment, because of such individual's age.[12]

Under the ADEA, it is unlawful for an employer to make an employment decision on the basis of an individual's age when the individual is 40 years of age of older.  The ADEA does not require an employer to give special, more favorable treatment to employees who are 40 years of age or older, only not to treat them less favorably because of their age.

In this case, the plaintiff claims that the defendant discriminated against him

---

[11] Cronin v.  Aetna Life Insurance Co.,  46 F.3d 196 (2d Cir. 1994); Maresco v.  Evans Chemetics Division, 964 F.2d 106, 111 (2d Cir. 1992)

[12] 29 U.S.C. §631(a).

because of his age in two ways. First, the plaintiff contends that the defendant discriminated against him by re-assigning him as a region manager to a region farther from his home which contained restaurants that were performing poorly and then when he declined to take that position, by re-assigning him to a temporary region. The plaintiff also claims that the defendant discriminated against him because of his age by subsequently terminating his employment. The defendant denies that age was a factor in its decisions to either reassign the plaintiff or to terminate his employment.

To prevail on his claims that the plaintiff violated the ADEA, the plaintiff must show that an adverse employment action was taken against him because of his age. A plaintiff has suffered an adverse employment action if he endures a "materially adverse change" in the terms and conditions of his employment. A "materially adverse change" must be more destructive than a mere inconvenience or an alteration of job responsibilities. A transfer or reassignment is an adverse employment action under the ADEA if it results in a change of responsibilities so significant as to constitute a setback to the employee's career.[13]  As noted above, in this case, the plaintiff is claiming that two separate employment actions adversely affected him. First, the plaintiff is claiming that his reassignment to a different region was an adverse employment action. The defendant denies that the plaintiff's reassignment constituted an adverse employment action. The plaintiff also claims that the termination of his employment was an adverse employment action. Termination of employment, as a matter of law, is a materially adverse employment action and therefore I am instructing you that you must find that the plaintiff has proved that element.

Under the ADEA, it is unlawful for an employer to terminate an individual's employment or to otherwise taken an adverse employment action against any individual

---

[13] Galabya v. New York City Bd. Of Educ., 202 F.2d 636, 641 (2d Cir. 2000).

because of such individual's age.

At the time the plaintiff's employment was terminated, he was 51 years of age so it is undisputed that he is entitled to the protections of the ADEA. The ultimate question that you must keep in mind is whether the plaintiff was reassigned or terminated because of his age.

The plaintiff must prove by a preponderance of evidence that age was a substantial and motivating factor, that is that age played a motivating part in the defendant's decision to reassign him to a new area and/or to terminate his employment.

If you find that the plaintiff's re-assignment was a materially adverse employment action and that the plaintiff's age was a motivating factor in the defendant's decision to reassign him, then you must render a verdict in favor of the plaintiff unless you find that the defendant would have taken the same action regardless of the plaintiff's age. If you find that the plaintiff's age was not a motivating factor in Mr. Maglioli's decision to reassign him to a new area or that it was a motivating factor but Mr. Maglioli would have made the same decision even if he had not considered the plaintiff's age, then you must return a verdict for the defendant on the plaintiff's age discrimination claim based on the plaintiff's reassignment.

With respect to the plaintiff's age discrimination claim based on the termination of his employment, if you find that the plaintiff has proved by a preponderance of evidence that age was a substantial motivating factor in Mr. Maglioli's decision to terminate his employment, then you must render a verdict in favor of the plaintiff unless you find that Mr. Maglioli would have made the same decision even if he had not considered the plaintiff's age. I remind you again that the ultimate question you must answer is whether or not the

plaintiff was terminated because of his age.

### 4.    CFEPA AGE DISCRIMINATION CLAIM

The plaintiff's third claim is that the defendant's conduct violated the Connecticut law forbidding discrimination on the basis of age. The analysis of whether the plaintiff has proven discrimination by a preponderance of the evidence is the same under state or federal law. Therefore I instruct you that if you find for the plaintiff as to the claim of discrimination in violation of ADEA, you must also enter a verdict for the plaintiff on his claim under the Connecticut Fair Employment Practices Act. Similarly, if you find for the defendant on the first count of discrimination under the ADEA, you must find for the defendant on this claim under state law.[14]

### 5.    ADA Claim

Introductory Summary of ADA Claim

The plaintiff in this case also has brought a claim under a federal law called the Americans with Disabilities Act or ADA. In these instructions, I will refer to the Americans with Disabilities Act as the ADA. Generally, the ADA, among other things, prohibits employers from discriminating in employment against individuals who have physical or mental disabilities because of their disabilities.

The plaintiff Bedor contends that he had a physical disability, namely prostate cancer, and that defendant Friendly's reassigned him to a less desirable position and later terminated his employment because of his cancer disability. Defendant Friendly's denies that Mr. Bedor's cancer was a disability within the meaning of the ADA and contends that

---

[14] Hill v. Pinkerton Security Investigation Services, 977 F.Supp. 148, 153 (D. Conn. 1997); Levy v. CHRO, 236 Conn. 96, 103 (1996).

he did not have cancer either when he was reassigned to a different region or when his employment was terminated. In addition, defendant Friendly's denies that Mr. Bedor's alleged disability was factor in either its decision to reassign Mr. Bedor or to terminate his employment.

The fact that the plaintiff has brought a claim alleging a violation of the ADA does not mean that he has been wronged in the manner alleged. Mr. Bedor must prove each element of his ADA claim by a preponderance of the evidence and you are not to give any weight to the mere fact that allegations of wrongdoing have been made.

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."[15]

Elements of ADA Claim

In order to prove that defendant Friendly's discriminated against him on the basis of a disability in violatoin of the ADA, plaintiff Bedor must prove by a preponderance of the evidence all of the following:

(1) that he was an individual with a disability within the meaning of the ADA:

(2) that he was physically able to perform the essential functions of his job;

(3) that an adverse employment action was taken against him; and

(4) that his disability played a motivating role in the decision to reassign him and/or to terminate his employment.[16]

---

[15] 42 U.S.C. § 12112(a).
[16] Parker v. Sony Pictures Entertainment, Inc., 260 F.3d 100, 107 (2d Cir. 2001)

Individual With A Disability Element

The term "disability" within the meaning of the ADA is defined as a physical or mental impairment that substantially limits one or more of the major life activities of the individual.[17]  The impairment must be present at the time the allegedly discriminatory adverse employment action is taken.[18]

Plaintiff Bedor's ADA claim is based on a physical impairment, namely prostate cancer, and Bedor maintains that his cancer disease existed at the times he was reassigned to a different region and later when his employment was terminated. Defendant Friendly's contends that the plaintiff's cancer was completely removed by surgery, and that the plaintiff did not have cancer when he was reassigned or later when his employment was terminated.

The first question you must decide is whether or not Mr. Bedor was disabled within the meaning of the ADA at the time an adverse action occurred, that is at the time he was reassigned or later at the time his employment was terminated.   In determining whether or not Mr. Bedor was disabled under the ADA, you must first decide whether or not he had prostate cancer at either of those times, and if you decide that he did, then the second issue you must also decide is whether or not his prostate cancer was disabling within the meaning of the law which requires that it have the effect of substantially limiting one or more of Mr. Bedor's major life activities. I will explain to you what major life activities are later in these instructions.   My point here is that in determining whether or not plaintiff Bedor was disabled, you cannot rely solely on the diagnosis of prostate cancer.  Cancer

---

[17]  42 U.S.C. § 12102(2).
[18]  Castellano v. City of New Haven, 142 F.3d 58, 67 (2d Cir. 1998) ("The determination of whether a person is disabled should be made at the time of the discriminatory action...")

may be disabling for one person but not for another person. You must consider what effect prostate cancer actually had on plaintiff Bedor in determining whether or not he was disabled within the meaning of the ADA.

In order to be protected by the ADA, Mr. Bedor's physical impairment of prostate cancer must have been present at the time of the adverse employment actions and at those times it must also have substantially limited one or more of his major life activities.

Defendant Friendly's does not contest that prostate cancer is a physical impairment within the meaning of the ADA. However, Friendly's does deny that the plaintiff's prostate cancer existed at the time of the plaintiff's reassignment or at the time his employment was terminated.

A physical impairment rises to the level of a disability only if it substantially limits one or more of the plaintiff's major life activities. Merely having an impairment does not make one disabled for purposes of the ADA. A plaintiff must also demonstrate that the impairment substantially limits a major life activity.[19] The term "major life activities" refers to those activities that are of central importance to daily life or are central to the life process itself.[20] In this case, plaintiff Bedor claims that his prostate cancer affected his ability to engage in reproduction and sexual intercourse.[21]

"Substantially limited" means that the individual is restricted in performing an activity to a considerable or large degree. In determining whether the plaintiff's impairment substantially limited a major life activity, the factors to be considered are the nature and

---

[19] <u>Toyota Motor Mfg., Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 195 (2002).
[20] <u>Toyota Motor Mfg., Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 197 (2002)
<u>Bragdon v. Abbott</u>, 524 U.S. 624, 631 (1998)
[21] <u>Bradgon v. Abbot</u>, 524 U.S. 624, 638 (1998) ("Reproduction and the sexual dynamics surrounding it are central to the life process itself.")

severity of the impairment, its expected duration, and the long term impact of the impairment. A physical disability substantially limits a person's major life activities when that person is unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner or duration under which he or she can perform a particular major life activity as compared to the average person in the general population.[22]

In determining whether the plaintiff's Bedor's prostate cancer substantially limited his ability to reproduce and have sexual intercourse, you should compare the plaintiff's ability to reproduce and have sexual intercourse with that of the average person of comparable age as the plaintiff. In doing so, among the factors you should consider are: (1) the nature and severity of the impairment; (2) how long the impairment will last or is expected to last; and (3) the permanent or long-term impact or expected impact of the impairment. The impairment's impact must be permanent or long-term. Temporary impairments with little or no long-term impact are not sufficient.[23]

When determining whether an impairment substantially limits a major life activity, you must also take into consideration the effect of corrective or mitigating measures, such as, for example, prescription drugs, in correcting or lessening the effect of the impairment. To give you an example solely by way of illustration, a person might be so severely nearsighted that without eyeglasses or contact lenses he or she is substantially limited in

---

[22] 24 C.F.R. § 1630.2(j); <u>Toyota Motor Mfg., Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 197 (2002) ("[T]o be substantially limited…, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.")

[23] <u>Toyota Motor Mfg., Kentucky, Inc. v. Williams</u>, 534 U.S. 184, 197 (2002) (The impairment's impact must be "permanent or long-term."); 24 CFR § 1630.2(j)

the major life activity of seeing. However, with corrective lenses, the person's vision may be normal only slightly limited.

It is not the name of an impairment or a condition that matters, but rather the effect of an impairment or condition on the life of a particular person after available corrective measures are taken.[24]

The second element of an ADA discrimination claim that normally must be proved is that the plaintiff despite his disability is capable of performing the essential functions of his or her job with a reasonable accommodation of necessary. In the present case, there is no dispute that the plaintiff was physically capable of performing the essential functions of his job. Therefore, I instruct you that you must find for the plaintiff as to that element.

The plaintiff must also show that he was subjected to one or more adverse employment actions. In the present case, the plaintiff claims there were two separate adverse employment actions taken against him, namely his reassignment to a different region farther from his home and the later termination of his employment. Defendant Friendly's does not dispute that the termination of the plaintiff's employment constituted an adverse employment action, but Friendly's does dispute whether the reassignment was an adverse employment action. An adverse employment action is a significant change in employment status, such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.[25] To constitute an adverse employment action, a change in working conditions must be materially adverse, in other words the change must be more disruptive than a mere

---

[24] Sutton v. United Airlines, Inc., 527 U.S. 471 (1999)
[25] Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998); Gronne v. Apple Bank for Savings, 2000 WL 298914 at *5 (E.D.N.Y., Feb. 14, 2000); Mercer v. Brunt, 299 F.Supp. 2d. 21, 28-29 (D.Conn. 2004).

inconvenience or an alteration of job responsibilities.[26]  A transfer or reassignment accompanied by a less distinguished title, a material loss of benefits or other material adverse change would be indicative of a material adverse employment action.  However, a lateral transfer or reassignment to a substantially equivalent position with no decrease in salary or benefits is not an adverse employment action.

The ADA prohibits an employer from taking an adverse employment action against an employee because the employee is disabled.  Therefore, one of the things that the plaintiff must show by a preponderance of the evidence is that his disability was a motivating factor in the defendant's decision to reassign him and/or terminate his employment.  The plaintiff does not have to show that his disability was the only factor or the predominate factor that motivated defendant, only that it was one of the factors upon which the defendant based his actions.

You must give separate consideration to the defendant's decision to transfer, i.e. reassign the plaintiff to a new region and its later decision to terminate the plaintiff's employment.  In other words, if you find that the plaintiff was disabled at the time of his reassignment, you must decide whether his disability was a motivating factor in the defendant's decision to reassign him.  The question of whether a disability played a role in the subsequent decision to terminate the plaintiff's employment is a separate question which you must decide.

If you find that the plaintiff was disabled and that his disability was a motivating factor in the defendant's decision to reassign him and/or later to terminate his employment, then your verdict must be for the plaintiff and against the defendant unless the defendant

---

[26] <u>Galabya v. New York City Board of Educ.</u>, 202 F.3d 636, 640 (2d Cir. 2000).

proves by a preponderance of evidence that it would have taken the same action or actions even if the plaintiff had not been disabled.

In this case, defendant Friendly's maintains that it had legitimate, non-discriminatory reasons for reassigning the plaintiff and later terminating the plaintiff's employment. A legitimate, non-discriminatory reason is any reason or explanation unrelated to the plaintiff's disability.

The ultimate burden of persuading the jury that the defendant intentionally discriminated against the plaintiff because of his disability remains at all times with the plaintiff. The defendant therefore is not required to prove that its decision was actually motivated by the stated, legitimate non-discriminatory reasons.

In considering the legitimate, non-discriminatory reason or reasons stated by the defendant for its decisions, you are not to second guess those decisions nor to otherwise substitute your judgment for that of the defendant. Your responsibility is to decide whether the defendant violated the ADA by taking one or more adverse employment actions against the plaintiff because of a disability, not to decide whether or not those actions were fair or unfair. Even if you feel that the defendant did not treat the plaintiff fairly or right, you must find in favor of the defendant on the ADA claim unless the plaintiff proves by a preponderance of the evidence that the defendant intentionally discriminated against him because of a disability. If you find that the defendant's stated non-discriminatory reasons for its decisions are not the true reasons for its actions you may, but are not required to, infer that the untrue reasons are pretexts to hide discriminatory motivation.

It is your role as the jury to consider all of the evidence and based upon the evidence to determine whether or not defendant Friendly Ice Cream Corporation

intentionally discriminated against plaintiff Bedor because of his disability. In making that determination, you should not be swayed by sympathy because the plaintiff had cancer or otherwise. Nor should your decision be influenced by whether or not you believe the plaintiff was treated fairly or unfairly. If you find that the plaintiff had prostate cancer at the time an adverse employment action was taken and that at such time it substantially limited one or more of his major life activities, the question you must then answer is whether or not his prostate cancer was a motivating factor in the decision to reassign him, if you find that was an adverse action, or in the decision by Friendly's to terminate the plaintiff's employment.

### 6.    CFEPA DISABILITY DISCRIMINATION CLAIM

Lastly, the plaintiff also brings a disability discrimination claim under the Connecticut Fair Employment Practices Act, which I will refer to in these instructions as the CFEPA.

The CFEPA prohibits an employer, by himself or his agent, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against him in compensation or in terms, conditions or privileges of employment because of the individual's physical disability.[27]

The only difference between this claim and the defendant's claim for disability discrimination under the ADA is the definition of disability. The term "physically disabled" within the meaning of the CFEPA is defined as including any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illnesses. The term "chronic" means

---

[27] Connecticut General Statutes §46a-60(a)(1).

long lasting, persistent of long duration or long term. The determination of whether a person is disabled is made at the time of the alleged discriminatory action. Thus, the plaintiff must prove a preponderance of evidence that he suffered from a chronic physical infirmity or impairment at the time he was reassigned to a different region and at the time his employment was terminated.[28]

## MITIGATION OF DAMAGES

A plaintiff has a duty to mitigate, in other words to lessen, his damages. That is, the plaintiff is required to exercise reasonable diligence to locate substantially equal employment after his employment was terminated by the defendant. However, the burden is on the defendant to prove by a fair preponderance of the evidence that substantially equivalent job positions were available and the defendant failed to exercise reasonable efforts to obtain such employment.

If you find that the defendant is liable and that the plaintiff has suffered damages, then plaintiff may not recover back pay or other benefits for any period of time during which he failed to exercise reasonable diligence in seeking other suitable employment after he was terminated by the defendant. Therefore, if you find that plaintiff failed, during any period of time, to exercise reasonable diligence in seeking other suitable employment after his employment was terminated, you should deny his recovery for back pay and other benefits or reduce them for such periods of time.

You are the sole judge of whether the plaintiff failed to exercise reasonable diligence in seeking other suitable employment. In deciding whether to reduce plaintiff's

---

[28] Caruso v. Siemens Business Communications, Inc., 2004 WL 235365, *6 (D.Conn. 2004).

damages, you must weigh all the evidence in light of the circumstances of the entire case, and determine whether the defendant has satisfied its burden of proof.

You must deduct any money plaintiff either earned from any employment he obtained after he was terminated by defendant or could have earned had he taken reasonable steps to obtain suitable employment. Finally, you may not award damages based simply on speculation or guess work. Any award must compensate the plaintiff fairly for any injuries he may have sustained but must have a basis in the evidence and reasonable in light of the evidence.

## PUNITIVE DAMAGES

In addition to the damages mentioned in the other instructions, the law permits the jury under certain circumstances if it so chooses to award an injured person punitive damages in order to punish a defendant for some extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct. A finding of intentional discrimination in violation of the ADA does not warrant the imposition of punitive damages simply because the employer is aware that the ADA law exists or that it prohibits discrimination on the basis of disability. For punitive damages, the plaintiff must also prove by a preponderance of evidence that the defendant knew that its conduct violated the law or that the defendant acted with reckless disregard for whether its conduct was unlawful.

An award of punitive damages does not require showing egregious or outrageous discrimination of retaliation. The relevant inquiry is whether the employer knew or showed reckless disregard for whether its conduct was prohibited by the ADA. If you find the defendant discriminated against the plaintiff because of his disability and if you further find that the defendant acted with malice or with reckless indifference to the plaintiff's right not

to be discriminated against on the basis of his disability, then in addition to any compensatory or actual damages to which you find the plaintiff is entitled, you may, but are not required to, award plaintiff an additional amount as punitive damages. An act is undertaken in reckless disregard of the plaintiff's right to be free from discrimination if the executive who took an adverse employment action against the plaintiff at the time knew or should have known that the consequences of his actions would be to discriminate against plaintiff because he was disabled.

In sum, punitive damages may be awarded if you find that the defendant acted with malice or reckless indifference and the circumstances make it appropriate to punish defendant or to deter defendant and others from like conduct in the future. Whether to award plaintiff punitive damages, and the amount of those damages, if any, is within your discretion.

In the event that you decide to award punitive damages, in determining the amount of punitive damages to be awarded, you should consider the following questions:

1.    How offensive was the conduct?

2.    How did defendant's conduct impact plaintiff?

3.    What amount is needed, considering defendant's financial condition, to prevent further repetition of defendant's conduct?

4.    Does the amount of punitive damages have a reasonable relationship to the amount of actual damages awarded?

Neither sympathy for nor dislike of any party should not influence your decision.

THE DEFENDANT

Warren L. Holcomb, Esq.
Berchem, Moses & Devlin, P.C.
75 Broad Street
Milford, CT  06460
(203) 783-1200
Fed. I.D. #02478
wholcomb@bmdlaw.com